Robert W. Thompson, Esq. (SNB 106411)
Charles S. Russell, Esq. (SBN 233912)
CALLAHAN MCCUNE & WILLIS, APLC
111 Fashion Lane
Tustin, California 92780
Tel: 714-730-5700
Fax: 714-730-1642

George A. Hanson MO Bar # 43450
(*pro hac forthcoming*)
Todd M. McGuire MO Bar # 51361
(*pro hac forthcoming*)
Matthew L. Dameron MO Bar # 52093
(*pro hac forthcoming*)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101

FILED
2008 MAR -5 PM 3:27
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY

**IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA EASTERN DIVISION**

| | |
|---|---|
| MICHELLE TEETER, individually, and on behalf of a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NCR CORPORATION, an Ohio corporation.<br><br>Serve at:<br>1700 South Patterson Boulevard<br>Dayton, Ohio<br><br>Defendants. | Case No. ED CV 08 00297 SGL (JCRx)<br><br>**COMPLAINT**<br><br>**CLASS AND COLLECTIVE ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michelle Teeter, individually and on behalf of all others similarly situated, by and through her counsel, for her Complaint against NCR Corporation ("NCR") hereby states and alleges as follows:

1. Pursuant to Local Rule 8-1, the jurisdiction of this Court is premised on Plaintiff's claim for relief under the Fair Labor Standards Act ("FLSA"). Jurisdiction over Plaintiff's FLSA claim is based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court's jurisdiction over Plaintiff's state law claims is premised on supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as well as the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A).

2. This lawsuit is brought as a collective action under the FLSA to recover unpaid wages owed to Plaintiff and all other similarly situated customer engineers employed by NCR nationwide, and as a class action under California state law to recover unpaid wages owed to Plaintiff and all other similarly situated employees employed by NCR in the State of California.

**PARTIES, JURISDICTION AND VENUE**

3. NCR is a Maryland corporation with its principal place of business in Dayton, Ohio. NCR does business in the State of California and nationwide.

4. Michelle Teeter (also referred to herein as "Plaintiff" or "Class Representative Plaintiff") is a resident of Hesperia, California. She began working for NCR as a customer engineer in April 2005. She currently works for NCR as a customer engineer, and she has always worked in the State of California. Plaintiff's Consent to Become a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit A.

5. The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claims is based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6. Under 28 U.S.C. § 1367, this Court has jurisdiction over Plaintiff's state law claims because the state claims are so related to the FLSA claims that they form part of the same case or controversy. Additionally, jurisdiction over Plaintiff's state law claims is based upon the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), because the parties are diverse and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

7. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c), because NCR conducts business in this district.

## GENERAL ALLEGATIONS

8. NCR provides intellectual technology support to its clients in the form of customer engineers who install, maintain, and repair point of sale and cash-dispensing machines for NCR customers.

9. The principal job duty of customer engineers is to provide installation, maintenance, and repairs on point of sale equipment and other mechanical equipment at various locations within an assigned territory/region for NCR customers. Customer engineers also install, maintain, and repair cash-dispensing machines for NCR clients.

10. To fulfill their job duties and requirements, customer engineers travel between NCR customer locations throughout the workday in a vehicle provided by NCR. Customer engineers do not report to a centralized work location before arriving at their first work site. Similarly, customer engineers are not required to report to a centralized work location at the conclusion of their last site visit. In lieu of a physical office, NCR provides customer engineers with tools that allow them to work from home, including a vehicle, a laptop computer, and a Research In Motion ("RIM") device.

11. The standard schedule for NCR customer engineers reflects a nine hour work day, five days per week. However, NCR automatically deducts one hour of time from each workday to account for customer engineers' meal breaks, regardless of whether such breaks are actually taken. Thus, NCR's stated schedule for customer engineers reflects a forty hour workweek.

12. NCR defines the workday as beginning when customer engineers arrive at their first work site; NCR requires customer engineers to be at their first work site at the beginning of their scheduled shift. Before they arrive at their first work site, customer engineers perform several tasks that are integral and indispensable to their job duties. For example, customer engineers (1) use their RIM to check work assignments; (2) use their RIM to review the contracts between NCR and its customers; (3) check their email using the NCR-provided laptop computer; (4) communicate with the Control Tower to report their whereabouts; (5) participate in conference calls with their supervisor and co-workers; (6) review NCR manuals; (7) fill out and submit payroll and timekeeping records; and (8) communicate via telephone regarding their work assignments and schedules. Customer

engineers also perform many of these integral and indispensable tasks after the completion of their scheduled shift. NCR does not compensate customer engineers for these pre-shift and post-shift tasks, and it does not compensate customer engineers for their travel time before or after their shift.

13. Customer engineers perform other integral and indispensable tasks outside their scheduled shift period, such as (1) obtaining additional training via the NCR University, an online tutorial for customer engineers that provides training about parts and repairs; (2) researching and ordering equipment parts via the NCR intranet; (3) conducting inventories of the equipment parts in their possession; (4) drafting and submitting time records; and (5) reviewing NCR manuals. NCR does not compensate customer engineers for these tasks.

14. Given the demands of their jobs, customer engineers rarely take uninterrupted meal breaks that last for one hour, even though NCR automatically deducts one hour of pay for meal breaks.

15. Given the demands of their jobs, customer engineers rarely take uninterrupted meal breaks that last for at least thirty minutes, even when they work in excess of five hours.

16. Given the demands of their jobs, customer engineers rarely take uninterrupted rest breaks that last for at least ten minutes, even when they work in excess of four hours.

17. Currently there are two levels of customer engineers. All customer engineers, regardless of level, perform substantially the same job duties, and they are similarly situated to one another.

18. NCR classifies all customer engineers as hourly, non-exempt employees eligible for overtime compensation. Customer engineers are not subject to any exemption that would make them ineligible for overtime compensation.

19. Customer engineers submit their time records via email to their individual supervisor using a spreadsheet provided by NCR. The NCR spreadsheet automatically calculates a forty hour workweek. Prior to July 2007, the NCR spreadsheet automatically deducted one hour per day for meal breaks. After July 2007, customer engineers insert the one hour daily meal breaks into the spreadsheet at NCR's direction. If a customer engineer fails to include the one hour daily meal break,

the customer engineer's supervisor instructs the customer engineer to correct the time entry to reflect a one hour daily meal break, regardless of whether the customer engineer actually took such a break.

20. After customer engineers submit their time records to their supervisors, they log on to a website titled "Enterprise E-Time" to formally submit their time records. Customer engineers are required to approve a blank time sheet that calculates a total of eighty hours per pay period (forty hours per workweek).

21. Customer engineers are allowed to record and submit only limited overtime hours that are associated with certain compensable tasks. For example, all overtime hours submitted by customer engineers must be associated with a specific work order number, a client code, and an equipment identification number. Thus, NCR pays overtime compensation only if it is attributable to time that a customer engineer spends working in the field for a particular client on a specific work order. Because customer engineers do not have work order numbers or equipment identification numbers that correspond to their pre- and post-shift tasks that they perform at home, they are not allowed to submit the time they spend performing these integral and indispensable tasks for overtime compensation.

22. Customer engineers are victims of a common policy, practice or plan that violates federal and California state law.

23. The net effect of NCR's policy and practice instituted and approved by company managers is that NCR willfully fails to pay overtime compensation and willfully fails to keep accurate time records in order to save payroll costs. NCR's corporate policy resulted in widespread violations of the FLSA and California state law, and NCR enjoys ill-gained profits at the expense of its hourly employees.

## COLLECTIVE AND CLASS ALLEGATIONS

24. Plaintiff brings Count I, the FLSA claim, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and the following persons:

> all current and former employees of NCR who have worked as a customer engineer in the United States at any time during the last three years.

25. Plaintiff brings Count II (violation of California Business & Professions Code §§ 17200, *et seq.*) as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and as the Class Representative of the following persons:

> all current and former employees of NCR who have worked as a customer engineer in the State of California at any time during the last four years.

26. Plaintiff brings Counts III, IV, and V (violation of the unpaid straight-time wages, unpaid overtime wages, and meal and rest period claims, respectively) as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and as the Class Representative of the following persons:

> all current and former employees of NCR who have worked as a customer engineer in the State of California within the last three years.

27. Plaintiff brings Count VI (the quantum meruit claim) as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and as the Class Representative of the following persons:

> all current and former employees of NCR who have worked as a customer engineer in the State of California within the last two years.

28. The FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

29. The state law claims, if certified for class wide treatment, may be pursued by all similarly-situated persons who do not opt-out of the class.

30. Plaintiff, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging, among other FLSA violations, NCR's practice of failing to accurately record all hours worked, failing to pay employees for all hours worked, including overtime compensation, and failing to properly calculate and pay overtime compensation that was recorded. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from the records of NCR, and potential class members may easily and quickly be notified of the pendency of this action.

31. Plaintiff's state law claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

32. The class satisfies the numerosity standards and joinder of all class members in a single action is impracticable. Upon information and belief, the class of NCR customer engineers in the State of California number in at least the hundreds. Class members may be informed of the pendency of this class action through direct mail.

33. There are questions of fact and law common to the class that predominate over any questions affecting only individual members. The questions of law and fact common to the class arising from NCR's actions include, without limitation, the following:

(i) Whether NCR was unjustly enriched by failing to pay its employees the straight-time and overtime wages due and owing to them;

(ii) Whether NCR failed to provide adequate meal and rest periods;

(iii) Whether NCR failed to properly calculate and pay overtime in accordance with federal and state law; and

(iv) Whether NCR's conduct constituted a violation of the California Business and Professions Code §§ 17200, *et seq.*

34. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

35. Class Representative Plaintiff's claims are typical of those of the class, in that class members have been employed in the same or similar positions as Class Representative Plaintiff and were subject to the same or similar unlawful practices as Class Representative Plaintiff.

36. A class action is the appropriate method for the fair and efficient adjudication of this controversy. NCR has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for NCR, and/or substantially impair or impede the ability of class members to protect their interests.

37. Class Representative Plaintiff is an adequate representative of the class because she is a member of the class and her interests do not conflict with the interests of the members of the class that she seeks to represent. The interests of the members of the class will be fairly and adequately protected by Class Representative Plaintiff and her undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment and class action litigation.

38. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## COUNT I
## Violation of the Fair Labor Standards Act of 1938

**(Brought Against NCR by Class Representative Plaintiff Individually and on Behalf of All Others Similarly Situated)**

39. Plaintiff reasserts and re-alleges the allegations set forth in all preceding paragraphs.

40. At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

41. The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

42. NCR is subject to the overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

43. NCR violated the FLSA by failing to pay and properly calculate overtime. In the course of perpetrating these unlawful practices, NCR has also willfully failed to keep accurate records of all hours worked by its employees.

44. No FLSA exemption applies to Plaintiff or customer engineers.

45. Plaintiff and all similarly-situated employees are victims of a common policy, practice or plan that violated the FLSA. Upon information and belief, NCR has applied and continues to apply this common policy, practice or plan to all customer engineers employed nationwide.

46. Plaintiff and all similarly-situated employees are entitled to damages equal to the mandated overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because NCR acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

47. NCR has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay described pursuant to Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find NCR did act with good faith and reasonable grounds in failing to pay overtime pay, Plaintiff and all similarly-situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

48. As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by NCR from Plaintiff and all similarly-situated employees. Accordingly, NCR is liable for compensatory damages pursuant to 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**COUNT II**
**Violation of the California Business and Professions Code §§ 17200, *et seq.***

**(Brought Against NCR by Class Representative Plaintiff Individually and on Behalf of All Others Similarly Situated)**

49. Plaintiff reasserts and re-alleges the allegations set forth in all preceding paragraphs.

50. NCR's actions, including but not limited to the failure to maintain accurate employee time records, the failure to pay wages earned, and the failure to pay overtime compensation,

constitute fraudulent, unlawful and unfair business practices in violation of California Business and Professions Code §§ 17200, *et seq.* ("UCL").

51. Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, NCR committed acts of unfair competition, as defined by Bus. & Prof. Code § 17200, by failing to adequately and properly compensate its employees for work performed on behalf of NCR. These acts and practices violate the UCL in that:

a) the above-described failure to pay wages owed to Plaintiff and the Class constituted a fraudulent and deceptive business act or practice within the meaning of the UCL;

b) the above-described failure to pay wages owed to Plaintiff and the Class constituted an unlawful business practice under the UCL in that the failure violates the FLSA as described herein; and California Civil Code §1770(a)(5), which bars "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have ..."; and

c) the harm of the above-described failure to pay wages owed to Plaintiff and to the Class outweighs the utility of the practices by NCR and, consequently, constitutes an unfair business act or practice within the meaning of the UCL.

52. Upon information and belief, NCR continues its fraudulent, unlawful and unfair conduct as previously described. As a result of said conduct, NCR has fraudulently, unlawfully and unfairly obtained monies due to Plaintiff and the Class and are unfairly competing in the marketplace.

53. Plaintiff and all individuals within the Class are entitled to restitution of monies due, as well as disgorgement of the ill-gotten gains obtained by NCR, for a period of four years predating the filing of this Complaint.

54. As a direct and proximate result of NCR's conduct, Plaintiff and all individuals within the Class are entitled to a preliminary and permanent injunction enjoining NCR from continuing the fraudulent, unlawful and unfair practices described above, and to such other equitable relief as is appropriate under California Business and Professions Code § 17203, including restitution as well as specific relief to enforce the provisions of the California Labor Code and Fair Labor Standards Act pursuant to Business and Professions Code § 17202.

55. Plaintiff and all individuals within the Class are entitled to attorneys' fees and costs for promoting the interests of the general public in causing NCR to cease its unlawful and unfair business practices, in an amount according to proof, pursuant to California Code of Civil Procedure § 1021.5 and any other applicable law.

**COUNT III**
**Failure to Pay Straight-Time Wages in Violation of California State Law**

**(Brought Against NCR by Class Representative Plaintiff Individually and on Behalf of All Others Similarly Situated)**

56. Plaintiff reasserts and re-alleges the allegations set forth in all preceding paragraphs.

57. Plaintiff alleges that NCR maintained a policy and practice of paying employees without regard to the number of hours actually worked. NCR's policy and practice included requiring employees to work off the clock without pay on a systematic and daily basis. In doing so, NCR inaccurately under-reported the amount of time worked by Plaintiff.

58. Because of NCR's failures as alleged herein, Plaintiff did not receive compensation for all hours actually worked for NCR. In addition, NCR failed to pay customer engineers at the agreed hourly rate.

59. NCR's respective failure to pay the correct amount of straight-time hourly wages permits a civil suit to recover wages due to Plaintiff under California Labor Code section 218, as well as recovery of interest, reasonable attorneys' fees, and costs of suit under California Code sections 218.5 and 218.6.

**COUNT IV**
**Failure to Pay Overtime Wages in Violation of California State Law**

**(Brought Against NCR by Class Representative Plaintiff Individually and on Behalf of All Others Similarly Situated)**

60. Plaintiff reasserts and re-alleges the allegations set forth in all preceding paragraphs.

61. Throughout the liability period, IWC Wage Order No. 4 (8 C.C.R. § 11040) and California Labor Code section 510 required the payment of overtime premium(s) for hours worked in excess of eight in a given workday, forty in a given workweek, or on the seventh day worked in a single workweek. This premium increases to double-time for all hours worked over twelve in a single workday or eight on the seventh day worked in a single workweek.

62. Plaintiff often worked in excess of the maximum number of hours allowed by law without payment of the applicable overtime premiums.

63. NCR failed to pay Plaintiff the overtime required by California law, and failed to properly calculate recorded overtime in accordance with California law.

64. NCR's failure to calculate and pay the correct amount of overtime violates IWC Wage Order No. 4 (8 C.C.R. § 11040) and California Labor Code §§ 510 and 1198.

65. Because NCR failed to pay overtime as required by law, Plaintiff is entitled under California Labor Code §§ 218.5 and 218.6 and 1194(a) to recover the unpaid overtime balance, interest thereon, reasonable attorneys' fees, and costs of suit.

**COUNT V**
**Failure to Provide Rest and Meal Periods in Violation of California State Law**

**(Brought Against NCR by Class Representative Plaintiff Individually and on Behalf of All Others Similarly Situated)**

66. Plaintiff reasserts and re-alleges the allegations set forth in all preceding paragraphs.

67. Plaintiff regularly worked in excess of five hours per day without being afforded at least one half-hour meal period in which she was relieved of all duty, as required by California Labor Code §§ 226.7 and 512, and IWC Wage Order No. 4 (8 C.C.R. § 11040).

68. Plaintiff regularly worked in excess of ten hours per day without being afforded two half-hour meal periods in which she was relieved of all duty, as required by California Labor Code §§ 226.7 and 512, and IWC Wage Order No. 4 (8 C.C.R. § 11040).

69. Plaintiff regularly worked in excess of four hours per day without being afforded a ten-minute rest period.

70. Plaintiff regularly worked in excess of eight hours per day without being afforded either or both of the two ten-minute rest periods as required by California Labor Code §§ 226.7 and IWC Wage Order No. 4 (8 C.C.R. § 11040).

71. Plaintiff regularly worked shifts in excess of twelve hours per day without being afforded any or all of the three ten-minute periods as required by California Labor Code §§ 226.7 and IWC Wage Order No. 4 (8 C.C.R. § 11040).

72. For each time that Plaintiff was not provided the required rest and/or meal period, Plaintiff is entitled to recover backpay wages in the amount of one additional hour of pay at the employee's regular rate of compensation pursuant to California Labor Code §§ 226.7 and IWC Wage Order No. 4 (8 C.C.R. § 11040).

73. Plaintiff is entitled to payment for backpay for each rest and/or meal period that NCR failed to provide during the Class Period. Plaintiff is also entitled to payment of her reasonable attorney's fees and costs of suit incurred in recovering the additional pay pursuant to California Labor Code § 218.5, and interest pursuant to California Labor Code § 218.6.

**COUNT VI**
**Quantum Meruit**

**(Brought Against NCR by Class Representative Plaintiff Individually and on Behalf of All Others Similarly Situated)**

74. Plaintiff reasserts and re-alleges the allegations set forth in all preceding paragraphs.

75. When customer engineers performed administrative work from home, during their initial and end-of-the-day commute time, and during their meal period, customer engineers performed valuable services for NCR.

76. In failing to adequately pay Plaintiff and other customer engineers for their working time pursuant to applicable law and/or NCR's own stated policies, NCR was unjustly enriched by Plaintiff's uncompensated and/or under-compensated time.

77. The reasonable value of Plaintiff's and other customer engineers' uncompensated and/or under-compensated time is readily established by NCR's stated rates of pay in conjunction with applicable law for payment of minimum wage and overtime as well as the provision of rest breaks and meal breaks.

78. As a result of NCR's failure to adequately pay Plaintiff and other customer engineers, NCR is liable to its current and former customer engineers for the reasonable value of their unpaid services in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on her own behalf and on behalf of all others similarly situated, prays for relief as follows:

1. An order certifying that Count I of the action may be maintained as a collective action pursuant to 29 U.S.C. § 216(b);

2. An order certifying that Counts II-VI of the action may be maintained as a class action pursuant to Fed. R. Civ. P. 23.

3. Compensatory and statutory damages, penalties and restitution, as appropriate and available under each cause of action, in an amount to be proven at trial based on, *inter alia*, the unpaid balance of compensation owed by NCR;

4. Exemplary and punitive damages, as appropriate and available under each cause of action, pursuant to California Civil Code § 3294;

5. An order enjoining NCR from pursuing the unlawful policies, acts and practices complained of herein;

6. Attorneys' fees pursuant to *inter alia*, California Labor Code § 1194(a); and pursuant to the Fair Labor Standards Act of 1938;

7. Costs of this suit;

8. Pre- and post-judgment interest; and

9. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury of all issues triable by jury.

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates Riverside, California as the place for trial.

**Dated:** **March 5, 2008**

Respectfully submitted,

Robert W. Thompson, Esq.
Charles S. Russell, Esq.
CALLAHAN MCCUNE & WILLIS, APLC
111 Fashion Lane
Tustin, California 92780
Tel: 714-730-5700
Fax: 714-730-1642

George A. Hanson MO Bar # 43450
(*pro hac forthcoming*)
Todd M. McGuire MO Bar # 51361
(*pro hac forthcoming*)
Matthew L. Dameron MO Bar # 52093
(*pro hac forthcoming*)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101

**ATTORNEYS FOR PLAINTIFF**

**CONSENT TO BECOME A PARTY PLAINTIFF**

Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b)

I hereby consent to be a party plaintiff in the foregoing action.

Date: 2/

Printed Name: Michelle Teeter