Robert W. Thompson, Esq. (SBN 106411)
Charles S. Russell, Esq. (SBN 233912)
CALLAHAN MCCUNE & WILLIS, APLC
111 Fashion Lane
Tustin, California 92780
Tel:   714-730-5700
Fax:   714-730-1642

George A. Hanson (appearing *pro hac vice*)
Richard M. Paul III (appearing *pro hac vice*)
Lee Anderson (appearing *pro hac vice*)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel:   816-714-7100
Fax:   816-714-7101

**ATTORNEYS FOR PLAINTIFFS**

Joel E. Krischer
Joseph B. Farrell
Gene Chang
Latham & Watkins LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007

Angela K. Knarr
Latham & Watkins LLP
650 Town Center Drive, Suite 2000
Costa Mesa, CA 92626-1925

**ATTORNEYS FOR DEFENDANT**

**IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION**

| | |
|---|---|
| MICHELLE TEETER, individually, and on behalf of a class of others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>NCR CORPORATION,<br><br>               Defendant. | Case No. 5:08-cv-00297-SGL-JCR<br><br>**JOINT MOTION FOR APPROVAL OF CLASS SETTLEMENT, FOR CERTIFICATION OF SETTLEMENT CLASSES, AND FOR PERMISSION TO DISSEMINATE NOTICE TO THE CLASSES, AND MEMORANDUM IN SUPPORT**<br><br>Date:  April 6, 2009<br>Time:  10:00 a.m.<br>Dept.:  1<br>Judge:  Hon. Stephen G. Larson |

## MOTION

The parties jointly move this Court for an Order approving the FLSA collective action settlement and granting preliminary approval of the Rule 23 class action settlement reached on behalf of the following two settlement classes:

**The FLSA Settlement Class:**

All Customer Engineers employed by NCR or FLT in the United States except in California from August 10, 2005 until the date the Court enters its Order approving the FLSA settlement.

**The Rule 23 Settlement Class:**

All Customer Engineers employed by NCR or FLT in California from March 5, 2004 until the date the Court enters its Order granting preliminary approval of the Rule 23 settlement.

A copy of the parties' executed Settlement Agreement is attached hereto as Exhibit 1. The Declaration of Plaintiffs' Counsel Richard M. Paul III in support of this motion and brief is attached hereto as Exhibit 2. The proposed Notice of FLSA Collective Action Settlement and consent to join form is attached hereto as Exhibit 3. The proposed Notice of Class Action Settlement is attached hereto as Exhibit 4. The proposed Notice Plan is attached hereto as Exhibit 5. In support of this Motion, the parties incorporate the Memorandum in Support set forth below.

WHEREFORE, the parties respectfully request that the Court grant this Joint Motion and issue an Order that:

(a)     finds that the parties' Settlement Agreement falls within a range of reasonableness and appears to be fair, reasonable, and adequate as to members of each Class, subject only to any objections that may be raised at the final fairness hearing and final approval of the Rule 23 Class settlement by this Court;

(b)     approves the FLSA collective action settlement and authorizes notice to be sent to the FLSA class notifying them of their right to opt-in to this case and participate in the settlement;

(c)     grants preliminary approval of the Rule 23 Class settlement;

2

1    (d)    for settlement purposes only, certifies the FLSA Settlement Class as a

2    collective action under 29 U.S.C. § 216(b) and preliminarily certifies the Rule 23

3    Settlement Class as a class action under Federal Rule of Civil Procedure 23(b)(3),

4    approves Michelle Teeter as representative of the Rule 23 Settlement Class, and

5    appoints Stueve Siegel Hanson LLP and Callahan McCune & Willis LLP as Class

6    Counsel for both the FLSA and Rule 23 Settlement Classes;

7    (e)    approves Analytics, Inc., as the class administrator of the settlement;

8    (f)    approves as to form and content the proposed Notice of FLSA

9    Collective Action Settlement, the proposed Notice of Rule 23 Class Action

10   Settlement, and the Notice Plan as reasonable notice practicable under the

11   circumstances and in full compliance with applicable law;

12   (g)    approves the proposed procedure for submitting requests for exclusion

13   from the Rule 23 Class set forth in the Rule 23 Class Notice; and

14   (h)    orders that each Rule 23 Class member be given a full opportunity to

15   object to the Settlement Agreement, application for attorney's fees and costs, the

16   incentive awards to certain plaintiffs, and to participate at the Final Approval

17   Hearing.

18

19

20

21

22

23

24

25

26

27

28

JOINT MOTION FOR PRELIMINARY APPROVAL

## MEMORANDUM IN SUPPORT

## TABLE OF CONTENTS

**Page**

I.   Introduction ............................................................................................. 1

II.  Procedural Background ........................................................................... 1

   **A.**  Wage and Hour Class and Collective Action ................................... 1

   **B.**  Settlement Negotiations and Exchange of Class Data ..................... 2

III. Summary of The Proposed Settlement .................................................. 3

IV.  Approval of the FLSA Class Settlement and Preliminary Approval of the Rule 23 Class Settlement ................................................................. 5

   **A.**  The Proposed Settlement Enjoys an Initial Presumption of Fairness ............. 6

   **B.**  Analysis of the Applicable Factors Favors the Settlement .............................. 7

      1.  The Amount Offered in Settlement ................................................ 7

      2.  The Extent of Discovery and the Stage of the Proceedings ......................... 8

      3.  The Expense, Complexity, and Duration of Further Litigation .................. 8

      4.  The Experience and Views of Counsel ...................................... 9

      5.  The Strength of the Plaintiffs' Case ......................................... 9

      6.  The Risk of Maintaining a Class Action throughout Trial ....................... 10

   **C.**  Members of the FLSA Class are Similarly Situated for Settlement ............. 10

   **D.**  The Proposed California Settlement Class Satisfies Rule 23 ....................... 11

      1.  Rule 23(a)(1) Numerosity ............................................................ 12

      2.  Rule 23(a)(2) Commonality ........................................................ 12

      3.  Rule 23(a)(3) Typicality ............................................................. 12

      4.  Rule 23(a)(4) Adequacy ............................................................. 13

      5.  Rule 23(b)(3) Predominance and Superiority .............................. 14

V.   The Court Should Approve the Proposed Notices ................................ 15

    **A.**   The Proposed FLSA Class Notice Informs the Class of Their Rights ......... 15

    **B.**   The Proposed Rule 23 Class Notice Provides the Highest Level of Notice. 16

VI.    The Active Plaintiffs Are Entitled to Incentive Awards.............................. 17

VII.   Plaintiffs' Counsel Is Entitled to Reasonable Fees and Expenses................ 18

VIII.  Schedule of Events ........................................................................... 19

IX.    Conclusion...................................................................................... 20

**TABLE OF AUTHORITIES**

**Federal Cases**

*Aguayo v. Oldenkamp Trucking*, 2006 WL 3020943 (E.D. Cal. Oct. 17, 2006) ...... 5

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ................................................ 11

*Brown v. Phillips Petroleum Company*, 838 F.2d 451 (10th Cir. 1988) ................ 19

*Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*,
    1993 WL 355466 (W.D. Okla. 1993) ........................................................... 17

*Edwards v. City of Long Beach*, 467 F.Supp.2d 986 (C.D. Cal. 2006) ................. 11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................................ 16

*Ellis v. O'Hara*, 105 F.R.D. 556 (E.D. Mo. 1985) ............................................. 12

*Erie Cty. Retirees Ass'n v. County of Erie, Pennsylvania*, 192 F. Supp. 2d
    369 (W.D. Pa. 2002) ..................................................................................... 7

*Esler v. Northrop Corp.*, 86 F.R.D. 20 (E.D. Mo. 1979) .................................... 12

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ......................................... 7, 8

*Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ..... 5, 17

*Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ................................................ 19

*Gribble v. Cool Transports Inc.*, 2008 WL 5281665 (C.D. Cal.
    Dec. 15, 2008) ......................................................................................... 5, 10

*Grier v. Chase Manhattan Automotive Fin. Co.*, 2000
    WL 175126 (E.D. Pa. Feb. 16, 2000) ............................................................ 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................... 7, 19

*Heartland Comm'ns, Inc. v. Sprint Corp.*, 161 F.R.D. 111 (D. Kan. 1995) .......... 13

*Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989) ................................. 15

*In re Agent Orange Product Liability Litig.*, 818 F.2d 226 (2d Cir. 1987) ........... 19

*In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164
    (S.D.N.Y. 2000) ............................................................................................ 6

*In re Mego Fin. Corp. Securities Litig.*, 213 F.3d 454 (9th Cir. 2000) .......... 17, 18

*In re warner Comm. Sec. Lit.*, 618 F.Supp. 735 (S.D.N.Y. 1985) ....................... 6

*Kamp v. The Progressive Corp., et al.*, 2004 WL 2149079 (E.D. La. 2004) ......... 17

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ..................... 5, 6

*Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179 (D. Kan. 2002) ............. 9

*Milonas v. Williams*, 691 F.2d 931 (10th Cir. 1982) .......................................... 13

*Moralex v. Five J's Trucking, Inc.*, 2006 WL 1409733 (E.D. Cal. May 23, 2006) .. 5

*Morris v. Transouth Fin. Corp.*, 175 F.R.D. 694 (M.D. Ala. 1997) ..................... 14

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ............. 6

*Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597 (D. Colo. 1974) ....................... 8

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ................................. 6

*Rosenbaum v. MacAllister*, 64 F.3d 1439 (10th Cir. 1995) ...................................... 19

*Rosenburg .v Int'l Bus. Machines Corp.*, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007) ...................................................................................................... 5

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ...................................................................................................... 19

*Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417 (D.N.M. 1988) .................................................................................................. 14

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ............................ 5

*Viscaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .................................. 19

*Zapata v. IBP, Inc.*, 167 F.R.D. 147 (D. Kan. 1996) ............................................. 13


**Federal Statutes**

29 U.S.C. § 216(b) ................................................................................ 3, 10, 18

**State Statutes**

California Business and Professions Code §§ 17200 ............................................ 1

California Labor Code § 218 .............................................................................. 1, 2

California Labor Code §§201-203 ...................................................................... 2, 3

California Labor Code §§ 226.7 ............................................................................ 1

California Labor Code § 510 ................................................................................. 1

California Labor Code § 512 ................................................................................. 1

California Labor Code § 2698 ............................................................................... 2

IWC Wage Order No. 4 (8 C.C.R. § 11040) ........................................................ 1

**Federal Rules**

Federal Rule of Civil Procedure 23 ............................................................... *passim*


**Other Authorities**

*Manual for Complex Litigation*, § 21.632-33 (4th ed. 2004) ............................ 6, 7

*Manual for Complex Litigation*, § 40.42 (4th ed. 2004) ........................................ 8

3B Moore's Federal Practice § 23.05 .................................................................. 12

4 Newberg on Class Actions § 11.41 (4th ed. 2002) ............................................... 6

4 Newberg on Class Actions § 11.22 (4th ed. 2002) ............................................. 11

4 Newberg on Class Actions § 11.25 (4th ed. 2002) ............................................... 6

4 Newberg on Class Actions § 11.27 (4th ed. 2002) ............................................. 12

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237 (1985) ................................................................................... 19

# I.  INTRODUCTION

The parties have reached a settlement on behalf of these settlement classes:

**The FLSA Settlement Class:**

All Customer Engineers employed by NCR or FLT in the United States except in California from August 10, 2005 until the date the Court enters its Order approving the FLSA settlement.

**The Rule 23 Settlement Class:**

All Customer Engineers employed by NCR or FLT in California from March 5, 2004 until the date the Court enters its Order granting preliminary approval of the Rule 23 settlement.

For the reasons set forth below, the class settlement meets the standards for approving a collective action settlement under the Fair Labor Standards Act ("FLSA") and for granting preliminary approval of a class action settlement under Rule 23.  The settlement is memorialized in the Settlement Agreement attached to the accompanying Joint Motion as Exhibit 1.  The parties respectfully request that the Court approve the FLSA settlement, preliminarily approve the Rule 23 settlement, and authorize notice to be sent to both classes.

# II.  PROCEDURAL BACKGROUND

## A.  Wage and Hour Class and Collective Action

On March 5, 2008, Plaintiff Michelle Teeter filed a class and collective action Complaint against NCR Corporation on behalf of herself and others similarly situated alleging that NCR violated the FLSA by failing to pay for all overtime hours worked by Customer Engineers.  (Complaint, Doc. 1).  Plaintiff further alleged that NCR violated California state law by failing to (1) pay overtime in violation of IWC Wage Order No. 4 (8 C.C.R. § 11040) and California Labor Code § 510, (2) maintain accurate time records and pay all wages earned, constituting unfair business practices under California Business and Professions Code §§ 17200 *et seq.*, (3) provide rest and meal periods under California Labor Code §§ 226.7 and 512 and IWC Wage Order No. 4 (8 C.C.R. § 11050), and (4) pay straight-time wages in violation of California Labor Code § 218. *Id.*

After preliminary discovery, Plaintiff moved for class and collective action certification on July 30, 2008.  On September 26, 2008, NCR moved for partial summary judgment alleging that the Motor Carrier Act barred part of Plaintiffs' claims.  Both motions were fully briefed when the parties mediated the case.

**B.    Settlement Negotiations and Exchange of Class Data**

On January 6, 2009, the parties formally mediated the case with nationally-renowned mediator Mark Rudy of Rudy Exelrod & Zieff, LLP in San Francisco, California.  Mr. Rudy has significant experience mediating complex employment matters.  Exhibit 2, Declaration of Richard M. Paul III at ¶ 2 (hereinafter "Paul Decl.").  The attorneys who attended the mediation are experienced wage and hour litigators and vigorously represented their clients' respective interests.

Before mediation, the parties embarked on an extensive investigation and exchange of information to ensure an informed and constructive mediation.  The parties exchanged critical class, payroll, and compensation data.  Paul Decl., ¶ 3.  During mediation, the parties evaluated the policies and procedures regarding compensation, training, and time reporting by Customer Engineers employed by NCR; job responsibilities and duties of Customer Engineers; and payroll data showing weeks worked and wage rates during the class period.  Paul Decl., ¶ 4.  Negotiations were robust as both sides zealously advocated their interests.  *Id.*  At the close of mediation and after numerous post-mediation communications, the parties failed to reach agreement.  Paul Decl., ¶¶ 5-6.  After post-mediation discussions reached an impasse, Mr. Rudy made a mediator's proposal that, after further negotiation, resulted in the agreement described herein.  Paul Decl., ¶ 7.

To ensure that NCR receives a full and comprehensive release of wage and hour claims, Plaintiffs are filing an Amended Complaint to add NCR's wholly-owned subsidiary First Level Technology, LLC ("FLT") as a defendant, and add claims under the Private Attorney General Act, California Labor Code § 2698, *et seq.* and California Labor Code §§201-203 for wages due on termination.

### III.  SUMMARY OF THE PROPOSED SETTLEMENT

The parties have executed a Settlement Agreement that allows eligible members of each Class to participate in a settlement of wage and hour claims asserted in this action.  The FLSA Class is defined as all Customer Engineers employed by NCR or FLT in the United States except in California from August 10, 2005 until the date the Court enters its Order approving the FLSA settlement. Agreement, ¶ A.2.  There are approximately 4,400 people in the FLSA Class.  The Rule 23 Class is defined as all Customer Engineers employed by NCR or FLT in California from March 5, 2004 until the date the Court enters its Order granting preliminary approval of the Rule 23 settlement.  *Id.*  The Rule 23 Class consists of approximately 445 people.  The total amount of the settlement is $10,500,000 (the "Global Fund").  Agreement, ¶ A.3.  Of this amount, $5,328,000 is allocated to the FLSA Settlement Class, $2,512,000 is allocated to the Rule 23 Settlement Class, 25% ($2,625,000) of the Global Fund will be sought by Plaintiff's Counsel as attorney's fees, and $35,000 will be sought by Plaintiff's Counsel for out-of-pocket costs.  Agreement, ¶¶ A.3, A.6.  The cost of the Settlement Administrator, Analytics, Inc., will be allocated proportionately out of the funds designated for each settlement class.  Agreement, ¶ A.4.  The settlement allocates more of the administrative cost to the FLSA Class to account for the higher number of class members and the estimated relative cost of the opt-in procedural requirements.

In recognition of their service to the Classes, their assistance in prosecuting the case, and their participation in written discovery and appearing for deposition, Plaintiffs seek Incentive Awards of $10,000 each to Plaintiffs Teeter, Mercier, and Tagliabue, and $5,000 to plaintiff Qorrolli.  Agreement, ¶ A.5.  Additionally, Plaintiffs seek Incentive Awards of $1,000 each to five other Plaintiffs who responded to NCR's written discovery and significantly aided the prosecution of the case.  *Id.*  Incentive Awards will be paid out of the respective Class of which each of these Plaintiffs is a member.  *Id.*

Members of each class will be sent notice by first-class mail explaining the terms of the settlement, their respective rights under the settlement, the procedure for FLSA class members to opt-in, and the procedure for Rule 23 class members to opt-out or object.  (Exhibit 3, FLSA Notice; Exhibit 4, Rule 23 Notice).  The contents of the notices are not defined by the Settlement Agreement, and thus may be modified if the Court deems necessary.  Agreement, ¶¶ A.8-9.

Notice to each individual will state the minimum amount the individual will receive under the settlement based on 100% participation by the class.  Agreement, ¶ A.10.  Funds initially allocated to persons who ultimately do not participate will be reallocated within the respective classes to those who participate, subject to reversionary rights held by NCR in the FLSA fund up to a maximum of $500,000 plus one-half of payroll taxes paid by NCR.  Agreement, ¶ A.11.  Subject to this reversion and the reallocation to class members, and pursuant to California law, any unclaimed or uncashed settlement checks will be delivered to the California Unclaimed Funds Division, overseen by the California State Controller Office.

After the close of the opt-in and opt-out period, each individual's "Final Award" will be determined by the individual's number of weeks worked during the class period and their wage rate during the class period.  Agreement, ¶ A.10.a. Based on the total number of workweeks in the class period, Plaintiffs estimate that FLSA Class members will receive over $15 for every week they worked at NCR and Rule 23 Class members will receive over $50 for every work week.  The Rule 23 recovery is higher because there are significant additional claims for unpaid straight time and missed breaks, though because of the primarily non-reversionary structure of this settlement, the FLSA settlement amounts are likely to increase more than the Rule 23 settlement amounts in that it is likely that more people will not opt in to the FLSA settlement than will opt out of the Rule 23 settlement. While most class members would have sought several times this amount at trial, Plaintiffs believe this is a fair recovery.

The release is limited to "wage and hour" claims.  Agreement, ¶ B.  Rule 23 Class members who properly and timely opt-out will not be paid any amount and will not release any claims.  FLSA Class members release their claims only by submitting the opt-in form and cashing the check that will be mailed after their final amount is calculated.  To afford NCR the finality it seeks, it may revoke the settlement if Rule 23 opt-outs represent 5% or more, or if FLSA opt-ins represent less than 75%, of the weeks for which NCR potentially faces liability.  Agreement, ¶ A.12.  The settlement therefore is designed to ensure substantially all class members receive payment from the settlement.

## IV.  APPROVAL OF THE FLSA CLASS SETTLEMENT AND PRELIMINARY APPROVAL OF THE RULE 23 CLASS SETTLEMENT

For settlement purposes only, the parties seek certification of a class of California plaintiffs under Fed. R. Civ. P. 23 and a collective action of plaintiffs outside California under the FLSA.  The standard for approval of the settlement under both Rule 23 and the FLSA is similar:  the settlement must be "fundamentally fair, adequate and reasonable" *Gribble v. Cool Transports Inc.*, 2008 WL 5281665, at *6-7 (C.D. Cal. Dec. 15, 2008) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993), for Rule 23 standard and *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982) for FLSA standard).

The Court may finally approve the FLSA settlement at this time because those class-members release their claims only after electing to opt-in to the settlement.  Federal courts in California routinely approve similar settlements reached in FLSA collective actions.  *See, e.g., Gribble*, 2008 WL 5281665; *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007); *Rosenburg .v Int'l Bus. Machines Corp.*, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007); *Aguayo v. Oldenkamp Trucking*, 2006 WL 3020943 (E.D. Cal. Oct. 17, 2006); *Moralex v. Five J's Trucking, Inc.*, 2006 WL 1409733 (E.D. Cal. May 23, 2006).

Approval of a Rule 23 class settlement involves a two-step process. *Manual for Complex Litigation*, § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.25, at 38-39 (4th ed. 2002). First, counsel submits the proposed terms of settlement and the Court makes a preliminary fairness evaluation. If the settlement does not contain obvious deficiencies or grounds to doubt its fairness, the Court should direct that notice under Rule 23(e) be given to class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement. *See Manual* § 21.633. The parties request that the Court approve the FLSA settlement and grant preliminary approval of the Rule 23 settlement.

## A.    The Proposed Settlement Enjoys an Initial Presumption of Fairness

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *see Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."); *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing policy encouraging settlement of FLSA litigation).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 *Newberg on Class Actions* § 11.41. After the parties' arm's length negotiations, "it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 173-74 (S.D.N.Y. 2000) (quoting *In re Warner Comm. Sec. Lit.,* 618 F.Supp. 735, 746 (S.D.N.Y. 1985)); *accord Grier v. Chase Manhattan Automotive Fin. Co.*, Case No. 99-180, 2000

WL 175126, at *5 (E.D. Pa. Feb. 16, 2000) ("An initial presumption of fairness attaches to a class settlement reached in arm's length negotiations between experienced and capable counsel after meaningful discovery.").

**B.    Analysis of the Applicable Factors Favors the Settlement**

The Court's evaluation of the settlement should consider (1) the amount offered in settlement; (2) the extent of discovery completed and the stage of the proceedings; (3) the risk, expense, complexity, and likely duration of further litigation; (4) the experience and views of counsel; (5) the strength of the plaintiffs' case; and (6) the risk of maintaining class action status throughout the trial. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

**1.    The Amount Offered in Settlement**

Most critically, the settlement puts substantial amounts of money in the hands of class members and provides the Class with a substantial portion of the relief sought in the Complaint, without the delay and expense of trial and post-trial proceedings.  This is not a case where the benefit to the class is largely injunctive or of speculative value.  Although the maximum possible award at trial may be larger than the settlement amount, the inquiry as to whether a settlement is reasonable examines the benefits of the settlement in light of the risks of establishing liability and damages. *See, e.g., Erie Cty. Retirees Ass'n v. County of Erie, Pennsylvania*, 192 F. Supp. 2d 369, 375-76 (W.D. Pa. 2002).  As to the Rule 23 Class, preliminary approval is not an ultimate determination of whether the settlement is fair, reasonable, and adequate.  Rather, at this stage the Court must merely determine "whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982).  This necessarily involves a preliminary determination of the settlement's fairness, reasonableness, and adequacy. *See Manual*, § 21.632.  If the Court finds the settlement "within the range of possible

approval," it should order that the Rule 23 Class be notified of the settlement and the formal fairness hearing. *See id.* at § 40.42 (model preliminary approval order).

By any objective measure, the compensation this settlement makes available to Class Members is favorable and provides Class Members reasonable consideration for their alleged claims. The settlement brings class members significant monetary value *now*, not years from now, and provides certainty about the outcome. "In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974).

## 2. The Extent of Discovery and the Stage of the Proceedings

The nature and scope of pre-settlement discovery strongly favors the settlement. The parties undertook substantial investigative efforts and discovery of critical class information. Both parties propounded and responded to interrogatories and requests for production of documents. Four Plaintiffs and NCR's Vice President of Human Resources were deposed; over 80,000 pages of documents and extensive electronic payroll records of all putative class members were produced and scrutinized. Paul Decl., ¶ 3. Armed with critical class data, Plaintiff's counsel were able to evaluate the value of class members' claims and negotiate a fair settlement on behalf of the class. Paul Decl. ¶ 8.

## 3. The Expense, Complexity, and Duration of Further Litigation

This case is complex and carries significant risks for the parties as to both legal and factual issues, and litigating the case to trial would likely consume great time and expense. Discovery and mediation discussions revealed that thousands of workers are included in the putative classes. NCR's motion for summary judgment is based on a statutory amendment passed in June 2008, months after this case was filed, demonstrating the fluid and uncertain status of applicable law. Although substantial discovery was conducted prior to mediation, full discovery would predictably have involved many more depositions, costly document review and

1  production, and motions to resolve disputes over the proper scope of discovery.

2  Trial and post-trial litigation would consume years before finality and payment.

3  **4.  The Experience and Views of Counsel**

4  The experience of Class Counsel in litigating and negotiating complex wage

5  and hour disputes likewise strongly favors approving the settlement.  "[W]hen a

6  settlement is reached by experienced counsel after negotiations in an adversarial

7  setting, there is an initial presumption that the settlement is fair and reasonable."

8  *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

9  The putative class had the benefit of attorneys who are highly experienced in

10  complex litigation and familiar with the facts and law in the case, and who have

11  negotiated many such class and collective action settlements.  *See* Exhibit 2-A,

12  Firm Resume of Stueve Siegel Hanson LLP.  The negotiations were at all times

13  hard-fought and at arm's length.  *See* Paul Decl. ¶¶ 4-7.  In Plaintiff's counsel's

14  view, the settlement provides substantial benefits to the Classes, especially when

15  one considers, among other things, the attendant expense, risks, difficulties, delays,

16  and uncertainties of litigation, trial, and post-trial proceedings.  *See* Paul Decl. ¶ 8.

17  **5.  The Strength of the Plaintiffs' Case**

18  The parties naturally dispute the strength of the Plaintiffs' case, and the

19  settlement reflects the parties' compromise of their assessments of the worst-case

20  and best-case scenarios, weighing the likelihood of various potential outcomes.

21  The Settlement is a product of vigorous litigation and extensive dialogue between

22  the parties after mediation failed.  Even after the mediator's proposal prompted an

23  agreement in principle, details of the settlement involved extensive further

24  negotiation and compromise.  Paul Decl., ¶ 7.  This reflects the parties' zealous

25  representations of their respective positions on Plaintiffs' claims, NCR's defenses,

26  and the difficulties and risks associated with protracted litigation.

27  After thorough investigations of the facts and law, the parties have gained a

28  comprehensive   knowledge   of   Plaintiffs'   claims   and   NCR's   defenses.

Consequently, the parties have ample evidence to make an informed assessment of the merits of their positions.  Based on their knowledge of the case and applicable law, as well as their experience in similar FLSA actions, the parties' counsel believe the settlement is fair, reasonable and adequate.  Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight.  *Gribble*, 2008 WL 5281665 at *9 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts").

### 6.    The Risk of Maintaining a Class Action throughout Trial

Plaintiffs allege that NCR failed to keep accurate records of all time worked by its Customer Engineers; in the absence of complete and accurate records, Plaintiffs would have faced challenges in proving liability and damages on a representative basis, contingent on rulings from the Court about each side's respective burdens of proof and presumptions under complex statutes, regulations, and case law.  Although Plaintiffs believe the case is ideally suited for class treatment and the standard for first-phase certification is low, NCR strongly contested Plaintiffs' certification motion and would certainly have filed a motion to decertify at the second phase.

In sum, the settlement brings substantial and certain monetary value to class members now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and changing labor law.  While both sides believe the facts support their respective positions, Plaintiffs and NCR reached this proposed compromise after extended settlement discussion facilitated by a nationally renowned mediator.  The parties therefore request that the Court approve the FLSA settlement, preliminarily approve the Rule 23 settlement, and authorize notice to be sent to the respective class members.

### C.    Members of the FLSA Class are Similarly Situated for Settlement

Under FLSA § 216(b), an action for unpaid wages may be maintained by "one or more employees for and in behalf of himself or themselves and other

employees similarly situated." "[A] class may be certified under the FLSA if the named plaintiff can show that his position was or is similar to those of the absent class members." *Edwards v. City of Long Beach*, 467 F.Supp.2d 986, 990 (C.D. Cal. 2006). Preliminary certification of an FLSA class employs a "fairly lenient standard and typically results in conditional class certification." *Id.*

Although the Court has not decided Plaintiffs' motion for certification, NCR agrees, for settlement purposes only, that the putative FLSA class of Customer Engineers are similarly situated. In their certification motion, Plaintiffs adduced evidence that all Customer Engineers share the same job description and are all treated by NCR as hourly, non-exempt workers. Plaintiffs adduced evidence that Customer Engineers in multiple geographic locations around the country experienced a common policy of not being paid all overtime wages due. Additional Customer Engineers continue to opt-in to the case to assert that they were not paid for all time worked. The FLSA Class consists only of workers with the same job title and the same basic job duties. The parties therefore request that the Court find the FLSA Class members similarly situated for settlement purposes.

**D.    The Proposed California Settlement Class Satisfies Rule 23**

When granting preliminary approval of a Rule 23 settlement, the Court should determine whether the proposed Class is a proper class for settlement purposes. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual*, § 21.632. In certifying a settlement class, however, the Court is not required to determine whether the action would be manageable if tried, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Here, the Class meets the requirements of Rule 23(a) and (b)(3).

Provisional class certification is appropriate at the preliminary-approval stage where, as here, the proposed class has not previously been certified, and Plaintiff has created a substantial record supporting the propriety of class certification. *See Newberg*, § 11.22. The practical purpose of provisional class

certification is to facilitate dissemination of notice to the class of the terms of the proposed settlement and the date and time of the final-approval hearing. *See id.*, § 11.27. The requirements of Rule 23 are met, as follows:

### 1.     Rule 23(a)(1) Numerosity

The numerosity requirement is met if "the proposed class is so large that joinder of all class members would be impracticable." *Ellis v. O'Hara*, 105 F.R.D. 556, 559 (E.D. Mo. 1985). While there is no numerical requirement for satisfying the numerosity requirement, 40 class members generally satisfies the numerosity requirement. *Esler v. Northrop Corp.*, 86 F.R.D. 20, 34 (E.D. Mo. 1979) ("it has been suggested that generally classes of forty or more persons have been certified, while those of less than twenty-five have not been certified"); 3B *Moore's Federal Practice* § 23.05 (2d ed.1995). During the class period, Defendants employed approximately 445 Customer Engineers throughout California. Thus, the numerosity requirement is satisfied.

### 2.     Rule 23(a)(2) Commonality

The commonality requirement of Rule 23(a) is met "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2); *Ellis*, 105 F.R.D. at 559. Here, the overarching questions of fact and law that are common to all members of the Class include whether Defendants failed to pay Customer Engineers the wages due and owing to them and whether NCR's conduct was willful. In addition, common questions binding the Class include whether Defendants (i) failed to provide required meal and rest periods; (ii) failed to pay all compensation due and owing at termination of employment; and (iii) whether Customer Engineers are subject to the FLSA's Motor Carrier Act exemption.

### 3.     Rule 23(a)(3) Typicality

Rule 23(a)(3) requires that "the claims ... of the representative parties are typical of the claims ... of the class." Fed. R. Civ. P. 23(a)(3). Typicality, however, does not require that the claims be identical. *Milonas v. Williams*, 691 F.2d 931,

938 (10th Cir. 1982). Rather, the class representative must simply have the "same interests and suffer the same injuries as the proposed class." *Heartland Comm'ns, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 116 (D. Kan. 1995). Like all other Class Members, Class Representative Teeter was a Customer Engineer in California during the relevant time frame. Moreover, Plaintiff Teeter's interests are co-extensive with those of the Class because she alleges the same injury as all class members, from the same alleged misconduct by Defendants. Defendants, likewise, allege defenses co-extensive to Plaintiff Teeter and the class. Because the interests and potential injuries of the Class Representative align with those of absent class members, they satisfy the typicality requirement.

### 4.    Rule 23(a)(4) Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts have broken down the requirement into an evaluation of (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation. *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 160 (D. Kan. 1996). Here, Rule 23(a)(4) is satisfied because the Class Representative has interests in harmony with the Class and has retained counsel with extensive experience in prosecuting class actions and complex cases, including wage and hour cases. *See Zapata*, 167 F.R.D. at 161 ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the action on behalf of the class."). Plaintiff Teeter has vigorously pursued the interests of the class, fully engaged in discovery including being deposed, and participated in mediation. Her interests are synonymous with those of the class.

In the interest of full and fair disclosure, NCR and Ms. Teeter have entered into a severance agreement for Ms. Teeter to leave her employment at NCR.

1    Discussions of the severance agreement for Ms. Teeter did not occur until after the
2    parties reached an agreement on the material terms of the settlement and an
3    agreement on the severance terms was not reached until after the Settlement
4    Agreement at issue here was executed.  Paul Decl. ¶ 11.  The Settlement and Ms.
5    Teeter's severance are in no way contingent on each other, and the terms of the
6    severance and the Settlement have in no way been influenced by each other.  *Id.*

7    ### 5.    Rule 23(b)(3) Predominance and Superiority

8        Finally, the proposed Class meets the requirements of Rule 23(b)(3).  To
9    certify a class action under Rule 23(b)(3), the Court must find that: (1) common
10   questions predominate over any questions affecting only individual members; and
11   (2) class resolution is superior to other available methods for the fair adjudication
12   of the controversy.  Fed. R. Civ. P. 23(b)(3).  Here, questions of law and fact
13   common to the Class—involving whether Defendants violated California state and
14   federal wage law and whether Customer Engineers are subject to the FLSA's
15   Motor Carrier Act exemption—predominate over any individual questions.

16       A class action is also superior to other methods for the fair and efficient
17   adjudication of this controversy.  "[O]ne of the most important objectives of the
18   class action procedure is the aggregation of a small number of claims to allow for
19   relief in situations where it might not otherwise be obtainable."  *Morris v.*
20   *Transouth Fin. Corp.*, 175 F.R.D. 694, 701 (M.D. Ala. 1997); *accord Sollenbarger*
21   *v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417, 436 (D.N.M. 1988)
22   ("Plaintiffs have small claims that they could not effectively litigate on an
23   individual basis.").  Members of the Class are not likely to have an interest in
24   prosecuting or controlling individual cases against Defendants, large and
25   sophisticated companies with an abundance of resources.  Additionally, concerns
26   of efficiency and economy favor litigating the issues in one suit before this Court,
27   rather than forcing individuals to file numerous suits.  Adjudicating these claims

28

1   through this settlement avoids duplicative litigation of uniform questions of fact

2   and law and minimizes expense.

3                    **V.   THE COURT SHOULD APPROVE THE PROPOSED NOTICES**

4   **A.      The Proposed FLSA Class Notice Informs the Class of Their Rights**

5         FLSA section 216(b) provides that FLSA claimants are not parties to the suit

6   unless and until they affirmatively opt-in. *Hoffman-La Roche, Inc. v. Sperling*, 493

7   U.S. 165, 168-69 (1989).   Thus unlike Rule 23 class members, the putative

8   members of the FLSA class will not have their rights extinguished by the Court's

9   judgment unless they have affirmatively consented to join.   The purpose of the

10   FLSA notice is therefore to afford FLSA class members the opportunity to

11   participate and receive payment.   Because NCR's release, Class Counsel's fees,

12   and the viability of the settlement all potentially depend on achieving a minimum

13   75% opt-in rate among the FLSA class, all concerned are uniformly dedicated to

14   ensuring the FLSA Class members receive notice and participate in the settlement.

15         The form of the FLSA notice set forth in Exhibit 3 and the administrative

16   process accordingly aim to ensure success in achieving benefits for all claimants.

17   It will be mailed to class members at their last known address in NCR's records.

18   The notice clearly and concisely describes the settlement, including the minimum

19   payment the class member will receive, the release of claims, that opting in is not

20   required, and how to get additional information.   Additionally, the proposed Class

21   Notice advises Class Members that Plaintiff's counsel will apply to the Court for

22   an award of fees in an amount not to exceed 25% and up to $35,000 in out of

23   pocket costs, to be paid by NCR in addition to the amount paid to class members.

24   The Notice also discloses the proposed Incentive Awards to be paid from the

25   FLSA Class to six Plaintiffs who have substantially aided in the prosecution of the

26   case.   The Class Notice is accurate and fully informs Class Members of the

27   material terms of the settlement and their rights pertaining to it.   The Court should

28   approve the proposed form and method of Class Notice.

**B.      The Proposed Rule 23 Class Notice Provides the Highest Level of Notice**

Under Rule 23(c)(2), courts "shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). Here, the Rule 23 Notice attached as Exhibit 4 follows the template approved by the Federal Judicial Center, and will be mailed to Class Members at their last known addresses in NCR's records, complying with the highest level of notice recognized by law.

In an action under Rule 23(b)(3), the notice must also "concisely and clearly state in plain, easily understood language" the nature of the action; the definition of the class certified; the class claims, issues, and defenses; that the class member may appear through counsel if the class member wishes; that the Court will exclude class members who request exclusion and the process for doing so; and the binding effect of a class judgment on class members. *See* Fed. R. Civ. P. 23(c)(2). The proposed Class Notice complies with these requirements.

The Rule 23 Notice in Exhibit 4 explains in clear terms (1) the nature of the settlement and the claims released, (2) the minimum amount each eligible class member has been allocated if they participate in the settlement, and (3) the requirement that each class member opt-out if they do not wish to participate in the settlement.  The Notice informs Class Members of the terms and provisions of the Settlement Agreement; the relief the Settlement will provide; the date, time and place of the final approval hearing; and the procedures and deadlines for opting out or submitting comments or objections.  Additionally, the proposed Class Notice advises Class Members that Plaintiff's counsel will apply to the Court for an award of fees in an amount not to exceed 25% and up to $35,000 in out of pocket costs, to be paid by NCR in addition to the amount paid to class members.  The Notice also discloses the proposed Incentive Awards to be paid from the Rule 23 Class to the

1  Class Representative and two other Plaintiffs who substantially aided in the
2  prosecution of the case.  The Class Notice is accurate and fully informs Class
3  Members of the material terms of the settlement and their rights pertaining to it.
4  The Court should approve the proposed form and method of Class Notice.

5  ## VI. THE ACTIVE PLAINTIFFS ARE ENTITLED TO INCENTIVE AWARDS

6  In light of their substantial efforts assisting counsel in achieving this
7  settlement on behalf of the Class Members, named Plaintiff Michelle Teeter and
8  eight other Plaintiffs—Mercier, Tagliabue, Qorrolli, Eckenstein, Knapp, Pigate,
9  Rascon, and Chesley—who filed consent to join forms early in this case and aided
10 in discovery and the prosecution of the case are entitled to Incentive Awards.  The
11 time an individual devotes to a lawsuit that inures to the common benefit of others
12 warrants entitlement to an incentive award above and beyond what the typical class
13 member is receiving.  *Cimarron Pipeline Constr., Inc. v. National Council on
14 Compensation Ins.*, 1993 WL 355466 (W.D. Okla. 1993) (awarding $10,000
15 incentive award to each of three class representatives); *Kamp v. The Progressive
16 Corp., et al.*, 2004 WL 2149079 (E.D. La. 2004) (approving up to $10,000
17 incentive awards to class representative and other plaintiffs aiding in the litigation).

18 In the *Glass* case, the court approved $25,000 incentive awards to each of
19 four class representatives in a case where no formal discovery was conducted and
20 the case was settled for $45,000,000.00.  2007 WL 221862, at *16-17.  The Ninth
21 Circuit has affirmed the District Court's exercise of discretion to approve incentive
22 awards of $5,000 to two plaintiffs whose efforts in the litigation resulted in a class
23 fund of $1.75 million.  *In re Mego Fin. Corp. Securities Litig.*, 213 F.3d 454, 457,
24 463 (9th Cir. 2000).  The Global Settlement Fund of $10,500,000 here easily
25 demonstrates the substantial benefits the active plaintiffs have brought to the class,
26 justifying incentive awards totaling $40,000 divided among nine Plaintiffs
27 according to their respective contributions to prosecuting the case.  Ms. Teeter was
28 responsible for initiating this action and provided invaluable guidance to Plaintiffs'

counsel in prosecuting these overtime claims on behalf of other similarly situated employees. Paul Decl., ¶ 10. Specifically, Ms. Teeter retained counsel and filed this case, provided the large majority of documents provided to Plaintiffs' counsel by the Plaintiffs, spent countless hours on the phone with counsel, and traveled to San Francisco from her home in Hesperia to act as Plaintiffs' representative at the mediation. *Id.* Ms. Teeter, Mr. Tagliabue, Mr. Mercier, and Mr. Qorrolli all assisted Plaintiffs' counsel in evaluating NCR's proffered defenses to this action and in understanding NCR's payroll system, made themselves available for deposition, and were active and involved in the prosecution of this case. Paul Decl., ¶¶ 10, 12-14. Messrs. Eckenstein, Knapp, Pigate, Rascon, and Chesley likewise substantially aided the prosecution of the case, aided Plaintiffs' counsel in understanding the facts underlying the parties' claims and defenses, and responded to written discovery. Paul Decl. ¶ 15.

The requested Incentive Awards recognize the approximate relative time commitments and substantive contributions to the case of each plaintiff, with the largest awards of $10,000 for Plaintiffs Teeter, Mercier, and Tagliabue, and smaller awards of $5,000 for Plaintiff Qorrolli and $1,000 for Plaintiffs Eckenstein, Knapp, Pigate, Rascon, and Chesley. There is no question that the other Class Members have substantially benefited from their actions. Without the efforts of Ms. Teeter in initiating the case and these other Plaintiffs who actively participated in discovery and prosecution of the case, this settlement would not have been achieved. Paul Decl., ¶ 16. In light of their efforts, the requested Incentive Awards, representing less than one-half of one percent of the total Settlement Fund, are amply justified.

## VII. PLAINTIFFS' COUNSEL IS ENTITLED TO REASONABLE FEES AND EXPENSES

Under the FLSA, plaintiffs are entitled to reasonable attorneys' fees spent in recovering unpaid wages. 29 U.S.C. § 216(b). An award of attorney fees to class counsel is also appropriate under Rule 23(h). The typical method for awarding

attorneys' fees in common fund cases, such as this case, is to award a percentage of the settlement funds. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994); *In re Agent Orange Product Liability Litig.*, 818 F.2d 226, 232 (2d Cir. 1987); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 255-56 (1985). The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Brown v. Phillips Petroleum Company*, 838 F.2d 451, 455 (10th Cir. 1988) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Thus, the percentage award results "in a sharing of the fees among those benefited by the litigation." *Brown*, 838 F.2d at 454. In applying the percentage of the fund methodology, the Ninth circuit has held that 25% of the total settlement fund is the benchmark fee award, *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990), and the usual range is 20-30%, *Viscaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

While Plaintiffs' counsel would typically be entitled to request an award of fees and expenses upon approval of an FLSA settlement, here the FLSA settlement is contingent on final approval of the Rule 23 settlement. Therefore, rather than try to divide or allocate the fees and expenses between the two components of this settlement, Plaintiffs' counsel will submit a single application for fees and costs with their motion for final approval of the Rule 23 settlement.

## VIII. SCHEDULE OF EVENTS

Entry of the proposed preliminary approval order involves setting dates and deadlines governing the settlement process for the Rule 23 Class settlement, including the date for the final fairness hearing. Should the Court grant preliminary settlement approval, the parties suggest that the Court adopt the

schedule set forth in the Notice Plan attached as Exhibit 5 and as set forth in the accompanying [Proposed] Order Granting Joint Motion for Preliminary Approval of Class Settlement, for Certification of Settlement Class, and for Permission to Disseminate Notice to Class.

### IX. CONCLUSION

For the reasons set forth above, the parties respectfully request that the Court grant their Joint Motion for Approval of Class Settlement, for Certification of Settlement Classes, and for Permission to Disseminate Notice to Class, and grant any other relief the Court deems just and proper.

| | |
|---|---|
| **STUEVE SIEGEL HANSON LLP** | **LATHAM & WATKINS LLP** |
| _/s/ Richard M. Paul III_ | _/s/ Joseph B. Farrell_ |
| George A. Hanson<br>Richard M. Paul III<br>Lee R. Anderson<br>460 Nichols Road, Suite 200<br>Kansas City, MO 64112<br>Telephone: (816) 714-7170<br>Facsimile: (816) 714-7101 | Joel E. Krischer<br>Joseph B. Farrell<br>Gene Chang<br>633 West Fifth Street, Suite 4000<br>Los Angeles, CA 90071-2007<br>Telephone: +1.213.485.1234<br>Facsimile: +1.213.891.8763 |
| Robert W. Thompson<br>Charles S. Russell<br>CALLAHAN MCCUNE & WILLIS, APLC<br>111 Fashion Lane<br>Tustin, California 92780<br>Telephone: (714) 730-5700<br>Facsimile: (714) 730-1642<br>**Attorneys for Plaintiffs** | Angela K. Knarr<br>Latham & Watkins LLP<br>650 Town Center Drive, Suite 2000<br>Costa Mesa, CA 92626-1925<br>Telephone: +1.714.540.1235<br>Facsimile: +1.714.755.8290<br>**Attorneys for Defendant** |