1  Robert W. Thompson, Esq. (SBN 106411)
   Charles S. Russell, Esq. (SBN 233912)
2  CALLAHAN MCCUNE & WILLIS, APLC
   111 Fashion Lane
3  Tustin, California 92780
   Tel:   714-730-5700
4  Fax:   714-730-1642

5  George A. Hanson (appearing *pro hac vice*)
   Richard M. Paul III (appearing *pro hac vice*)
6  Lee Anderson (appearing *pro hac vice*)
   STUEVE SIEGEL HANSON LLP
7  460 Nichols Road, Suite 200
   Kansas City, Missouri 64112
8  Tel:   816-714-7100
   Fax:   816-714-7101

9  **ATTORNEYS FOR PLAINTIFFS**

10 Joel E. Krischer
11 Joseph B. Farrell
   Gene Chang
12 Latham & Watkins LLP
   633 West Fifth Street, Suite 4000
13 Los Angeles, CA 90071-2007

14 Angela K. Knarr
   Latham & Watkins LLP
15 650 Town Center Drive, Suite 2000
   Costa Mesa, CA 92626-1925

16 **ATTORNEYS FOR DEFENDANT**

17

18              **UNITED STATES DISTRICT COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
19                   **EASTERN DIVISION**

20

21 | MICHELLE TEETER, individually, and on behalf of a class of others similarly situated, | Case No. 5:08-cv-00297-SGL-JCR |
   |---|---|
22 | | **JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT** |
   |                           Plaintiffs, | |
23 | v. | |
24 | NCR CORPORATION, *et al.* | Date:  August 4, 2009 |
   | | Time:  9:30 a.m. |
25 |                           Defendants. | Dept.:  1 |
   | | Judge:  Hon. Stephen G. Larson |

26

27

28

## MOTION

Plaintiff Michelle Teeter, on behalf of herself and a Settlement Class of all Customer Engineers employed by NCR or FLT in California between March 5, 2004 and April 6, 2009, and Defendants jointly move this Court for an order granting final approval of the proposed Rule 23 Settlement between the parties. The proposed settlement satisfies the requirements of Federal Rule of Civil Procedure 23(e) because it is fair and reasonable and provides adequate compensation to the Settlement Class for their claims based on the merits and circumstances of the case.  Court-authorized Notice was timely sent to the class members pursuant to the Court-approved notice plan and the class response was overwhelmingly positive.  Only two class members, out of a total of 530, opted-out of the settlement pursuant to the terms of the class notice and no class members objected to the settlement.

In support of this Motion, the parties incorporate by reference the facts and legal arguments set forth in the accompanying Memorandum of Law and the Declaration of Class Counsel Richard M. Paul III.

WHEREFORE, for the reasons more fully set out in the accompanying memorandum, the parties jointly request that the Court grant this motion and finally approve the settlement reached by the parties and provide any further relief deemed just and proper.

# MEMORANDUM IN SUPPORT

## TABLE OF CONTENTS

I.   Introduction ........................................................................................1

II.   Procedural Background ......................................................................1

   A.   Wage and Hour Class and Collective Action ...............................1

   B.   Protracted Settlement Negotiations ..............................................2

III.   Description of The Rule 23 Settlement ............................................3

IV.   Approval of the Rule 23 Class Settlement ......................................4

   A.   Analysis of the Applicable Factors Favors the Settlement.............6

      1.   The Amount Offered in Settlement..........................................6

      2.   The Extent of Discovery and the Stage of the Proceedings.........7

      3.   The Expense, Complexity, and Duration of Further Litigation.................7

      4.   The Experience and Views of Counsel ..................................8

      5.   The Strength of the Plaintiffs' Case ......................................8

      6.   The Risk of Maintaining a Class Action through Trial..............9

      7.   The Reaction of the Class to the Proposed Settlement .................9

   B.   The Settlement Class Satisfies Rule 23 ......................................10

      1.   Rule 23(a)(1) Numerosity ....................................................10

      2.   Rule 23(a)(2) Commonality ................................................10

      3.   Rule 23(a)(3) Typicality......................................................11

      4.   Rule 23(a)(4) Adequacy ......................................................11

      5.   Rule 23(b)(3) Predominance and Superiority .......................12

V.   The Class Notice Provided the Highest Level of Notice ...............13

VI.   The Active Plaintiffs Are Entitled to Incentive Awards ...............13

VII.   Plaintiffs' Counsel Is Entitled to Reasonable Fees and Expenses ...............17

VIII.   Conclusion ....................................................................................17

**TABLE OF AUTHORITIES**

<u>Statutes and Rules</u>

122 Stat. 1572, SAFETEA-LU Technical Corrections Act of 2008 ............ 7

Fed. R. Civ. P. 23 ......................................................... *passim*

<u>Cases</u>

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ................... 10

*Bogosian v. Gulf Oil Corp.*, 621 F.Supp. 27 (E.D. Pa. 1985) ............ 16

*Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623
    (N.D. Cal. 2005) ................................... 12

*Carroll v. Blue Cross Blue Shield of Mass.*, 157 F.R.D. 142 (D. Mass. 1994) 16

*Cimarron Pipeline Constr., Inc. v. Nat'l Council on Compensation Ins.*,
    1993 WL 355466 (W.D. Okla. 1993) ........................ 13

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ........ 10

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ................ 13

*Ellis v. O'Hara*, 105 F.R.D. 556 (E.D. Mo. 1985) ................ 10

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
    137 F.R.D. 240 (S.D. Ohio 1991) ........................ 14

*Erie City Retirees Ass'n v. County of Erie, Penn.*, 192 F.Supp.2d 369
    (W.D. Pa. 2002) ................................... 6

*Glass v. UBS Fin. Serv., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) 14

*Gribble v. Cool Transp. Inc.*, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) 5, 9

*Grier v. Chase Manhattan Auto. Fin. Co.*, 2000 WL 175126
    (E.D. Pa. Feb. 16, 2000) ................................... 5, 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........... 5, 6, 11, 12

*Hanson v. Acceleration Life Ins. Co.*, 2000 WL 3334098
 (D.N.D. June 21, 2000) ........................................................ 15

*Hughes v. Microsoft Corp.*, 2001 WL 34089697
 (W.D. Wash. Mar. 26, 2001) ................................................. 16

*Huguley v. Gen. Motors Corp.*, 128 F.R.D. 81 (E.D. Mich. 1989) ...... 14

*In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609 (D. Kan. 1995)   11

*In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164
 (S.D.N.Y. 2000) ................................................................. 5

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) .......... 14

*In re Pac. Enter. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ................ 7, 8

*Kamp v. The Progressive Corp.*, 2004 WL 2149079 (E.D. La. 2004) ...... 13

*Luevano v. Campbell*, 93 F.R.D. 68 (D.C.D.C. 1981) ..................... 14

*Marcus v. Kan. Dep't of Revenue*, 209 F.Supp.2d 1179 (D. Kan. 2002) ...... 8

*Morris v. Transouth Fin. Corp.*, 175 F.R.D. 694 (M.D. Ala. 1997) ....... 12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ... 4

*Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597 (D. Colo. 1974) ........ 7

*Pelletz v. Weyerhauser Co.*, 592 F.Supp.2d 1322 (W.D. Wash. 2009) ...... 16

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ................ 4

*Thornton v. East Texas Motor Freight*, 497 F.2d 416 (6th Cir. 1974) ...... 14

*Tierno v. Rite Aid Corp.*, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) ...... 10

Secondary Sources

4 Newberg on Class Actions § 11.41 ........................................ 5

Manual for Complex Litig. (4th Ed.) § 21.62 .............................. 5, 10

iii

# I.  INTRODUCTION

On April 6, 2009, this Court provisionally certified a collective action under the Fair Labor Standards Act (FLSA) and a class action under Rule 23 for settlement purposes.  The Court also finally approved the parties' collective action settlement under the FLSA and preliminarily approved the parties' Rule 23 class settlement, and authorized notice of the settlement be sent to all class members.  The Settlement Agreement ("Agreement") is attached hereto as Exhibit 1.

Notice was mailed pursuant to the Court's order and the response from the Rule 23 class members was overwhelmingly positive.  The notice fully informed class members of the settlement, including the minimum amount the recipient will receive under the terms of the settlement.  Only two class members opted out of the settlement pursuant to the terms of the Notice and there are no objections.  The parties now ask this Court to grant final approval of the Rule 23 settlement so that the settlement proceeds may be distributed to the class members.[1]

# II.  PROCEDURAL BACKGROUND

## A.    Wage and Hour Class and Collective Action

On March 5, 2008, Plaintiff Michelle Teeter filed a class and collective action Complaint against NCR Corporation on behalf of herself and others similarly situated alleging that NCR violated the FLSA by failing to pay for all overtime hours worked by Customer Engineers.  Plaintiff further alleged that NCR failed to (1) pay overtime in violation of IWC Wage Order No. 4 and California Labor Code § 510, (2) maintain accurate time records and pay all wages earned, constituting unfair business practices under California Business and Professions Code § 17200 *et seq.*, (3) provide rest and meal periods under California Labor Code §§ 226.7 and 512 and IWC Wage Order No. 4, and (4) pay straight-time wages in violation of California Labor Code § 218.  (Complaint, Doc. 1).

---

[1]     Although the Court has granted final approval of the FLSA class settlement, final judgment will not be entered unless and until the Rule 23 class settlement is finally approved.  Agreement at ¶ A.13.

1
2
3
4
5
6
7
8
9

Beginning in May 2008, the parties served multiple interrogatories and requests for production of documents on each other. *See* Declaration of Richard M. Paul III ("Paul Decl."), ¶ 4, attached hereto as Exhibit 2. The parties conducted depositions of the named Plaintiff, three opt-in Plaintiffs, and NCR's Vice President of Human Resources as a corporate representative. *Id.* Plaintiffs moved for class and collective action certification on July 30, 2008. On September 26, 2008, NCR moved for partial summary judgment alleging that the Motor Carrier Act barred a substantial part of Plaintiffs' claims. Both motions were fully briefed when the parties mediated the case.

10

**B.   Protracted Settlement Negotiations**

11
12
13
14
15

On January 6, 2009, the parties mediated the case with nationally-renowned mediator Mark Rudy of Rudy Exelrod & Zieff, LLP in San Francisco, California. Mr. Rudy has significant experience mediating complex employment matters. Paul Decl., ¶ 5. The attorneys who attended the mediation are experienced wage and hour litigators and vigorously represented their clients' respective interests.

16
17
18
19
20
21
22
23
24
25
26
27
28

Before mediation, the parties investigated Plaintiffs' claims and exchanged extensive discovery to ensure an informed and constructive mediation. The parties exchanged critical class payroll data. Paul Decl., ¶ 6. During mediation, the parties evaluated NCR's compensation and time-reporting policies and procedures for Customer Engineers; job duties of Customer Engineers; and payroll data showing weeks worked and wage rates during the class period. Paul Decl., ¶ 6. Negotiations were robust as both sides zealously advocated their interests. Paul Decl., ¶ 7. At the close of mediation, the parties were unable to reach a settlement. Paul Decl., ¶ 8. The parties continued to have numerous post-mediation communications, but still failed to reach agreement. Paul Decl., ¶ 9. After post-mediation discussions reached an impasse, Mr. Rudy made a mediator's proposal that was still not acceptable, but that motivated further negotiation, which finally resulted in the agreement described herein. Paul Decl., ¶ 10.

As part of the settlement agreement, and to ensure that NCR receives a full and comprehensive release of wage and hour claims, Plaintiffs filed an Amended Complaint on March 25, 2009 to add NCR's wholly-owned subsidiary First Level Technology, LLC ("FLT") as a defendant, and add claims under the Private Attorney General Act, California Labor Code § 2698, *et seq.* and California Labor Code §§201-203 for wages due on termination.

### III.  DESCRIPTION OF THE RULE 23 SETTLEMENT

On February 22, 2009, the parties executed a Settlement Agreement that allows eligible members of both the FLSA and Rule 23 Classes to receive meaningful monetary relief in exchange for the release of their wage and hour claims asserted in this action.  The total amount of the settlement is $10,500,000.

The Rule 23 Class, defined as all Customer Engineers employed by NCR or FLT in California from March 5, 2004 until April 6, 2009, consists of 530 people.  Of those 530, only two opted out of the settlement, and they worked for NCR for a total of only 35 weeks during the Class period.  Under the terms of the settlement, $2,512,000 of the total settlement fund of $10,500,000 is allocated to the Rule 23 Settlement Class.  Agreement, ¶ A.3.  Plaintiffs ask the Court to award a total of $12,000 in Incentive Awards to three Rule 23 class members in recognition of their efforts in pursuing this case.  Agreement, ¶ A.5 (Plaintiffs Teeter, Knapp, and Rascon).

The settlement fund will be distributed to class members based on their average rate of pay and the number of weeks they worked during the class period.  If final approval is granted, the average settlement distribution to Rule 23 class members will be several thousand dollars.  One-half of this payment will be paid as wages and the other one-half paid as interest and liquidated damages.  Agreement, ¶ A.17.  Pursuant to California law, any unclaimed Rule 23 class settlement checks will be delivered to the California Unclaimed Funds Division.

The cost of the Settlement Administrator, Analytics, Inc., will be allocated out of the funds designated for each settlement class.  Agreement, ¶ A.4.  Because the administration of the FLSA class, which is larger and involves sending, receiving, and filing returned opt-in forms, consumed the majority of Analytics' time, only 5% of the total fee of $44,900.00 charged by Analytics to administer this settlement will be charged to the Rule 23 settlement fund, with the balance paid out of the FLSA fund.

The release provided in exchange for the settlement payments is limited to "wage and hour" claims.  Agreement, ¶ B.  Under the agreement, NCR had the right to revoke the settlement if Rule 23 opt-outs represented more than 5%, or if FLSA opt-ins represented less than 75%, of the weeks for which NCR potentially faces liability.  Agreement, ¶ A.12.  Neither of these "blow-up" provisions was invoked due to the overwhelmingly positive response (less than 1% and more than 85%, respectively) to the settlement by class members.

Based on Plaintiffs' counsel's experience in other wage and hour class and collective actions, the settlement on behalf of the Rule 23 class members achieves a reasonable compromise of a bona fide dispute involving vigorously contested legal and factual issues.  *See* Paul Decl. at ¶ 11.

## IV.  APPROVAL OF THE RULE 23 CLASS SETTLEMENT

The law favors settlement, particularly in class actions where substantial resources can be conserved by avoiding the time, cost, and risk of prolonged litigation.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *see Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."   4 *Newberg on Class Actions* § 11.41; *accord Gribble v. Cool Transp. Inc.*, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008) ("a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties"); *Grier v. Chase Manhattan Automotive Fin. Co.*, 2000 WL 175126, at *5 (E.D. Pa. Feb. 16, 2000) ("An initial presumption of fairness attaches to a class settlement reached in arm's length negotiations between experienced and capable counsel after meaningful discovery."). After the parties' arm's length negotiations, "it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel."  *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 173-74 (S.D.N.Y. 2000) (quoting *In re Warner Comm. Sec. Lit.,* 618 F.Supp. 735, 746 (S.D.N.Y. 1985)).

The standard for approval of the settlement under Rule 23 is that the settlement must be "fundamentally fair, adequate and reasonable."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); Fed. R. Civ. P. 23(e)(2).  A settlement is fair when it treats class members equitably vis-à-vis each other. *Manual for Complex Litig.* (4th Ed.) § 21.62.  Here, each class member's award is calculated using the same equitable formula based on the class member's number of weeks worked and average wage rate during the class period.  Agreement, ¶ A.10.a.  A settlement is reasonable when it is responsive to the claims of the class members.  *Manual*, § 21.62.  Here, Plaintiffs claim that class members were deprived of wages due for work performed off-the-clock, and the settlement provides monetary payment to class members in exchange for a release of class members' wage and hour claims.  Agreement, ¶¶ A.10.a., B.  A settlement's adequacy is measured against what class members might have obtained without using the class action process.  *Manual*, § 21.62.  Here, the settlement compensates

Rule 23 class members for over two hours of unpaid work for each week worked during the class period, which approximates what class members could have proven in an individual case.  As set forth below, review of the detailed factors courts consider when evaluating settlements shows that this settlement is eminently fair, adequate, and reasonable, and should be approved.

## A.   Analysis of the Applicable Factors Favors the Settlement

The Court's evaluation of the settlement should consider (1) the amount offered in settlement; (2) the extent of discovery completed and the stage of the proceedings; (3) the risk, expense, complexity, and likely duration of further litigation; (4) the experience and views of counsel; (5) the strength of the plaintiffs' case; (6) the risk of maintaining class action status throughout the trial, and (7) the reaction of the class to the proposed settlement.  *Hanlon*, 150 F.3d at 1026.

### 1.   The Amount Offered in Settlement

Most critically, the settlement puts substantial amounts of money in the hands of Class members and provides the Class with a substantial portion of the relief sought in the Complaint, without the delay and expense of trial and post-trial proceedings.  This is not a case where the benefit to the Class is largely injunctive or of speculative value.  The settlement provides an average of over $4,700 to each Class member.  Although the maximum possible award at trial may be larger than the settlement amount, it may also be less or none at all.  The inquiry as to whether a settlement is reasonable examines the benefits of the settlement in light of the risks of establishing liability and damages.  *See, e.g., Erie Cty. Retirees Ass'n v. County of Erie, Pennsylvania*, 192 F.Supp.2d 369, 375-76 (W.D. Pa. 2002).  By any objective measure, the compensation this settlement makes available to Class members is favorable and provides Class members reasonable consideration for their claims.  Speculation that the settlement could possibly have been even better is irrelevant; the question is not whether the settlement could have been better, but whether the settlement is fair, reasonable, and adequate.  *Hanlon,* 150 F.3d at 1027.

The settlement brings class members significant monetary value *now*, not years from now, and provides certainty about the outcome. "In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974).

### 2.      The Extent of Discovery and the Stage of the Proceedings

The nature and scope of discovery strongly favors the settlement. The parties undertook substantial investigation and discovery of critical class information. Both parties exchanged interrogatories and document requests. Four Plaintiffs and an NCR corporate representative were deposed; over 80,000 pages of documents and extensive electronic payroll records of all putative class members were produced and scrutinized. Paul Decl., ¶ 4. Armed with critical class data, Plaintiffs' counsel were able to evaluate the value of Class members' claims and negotiate at length for a fair Class settlement. Paul Decl. ¶ 11.

### 3.      The Expense, Complexity, and Duration of Further Litigation

Class actions are typically complex, and the Ninth Circuit has a "strong judicial policy that favors settlements" of such cases. *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). This case is indeed complex and carries significant risks for the parties as to both legal and factual issues, and litigating the case to trial would likely consume great time and expense. For example, Plaintiffs' claims involve both federal and state substantive law, Rule 23 and FLSA procedural standards, and the dynamics of unsettled questions of law, as reflected in NCR's motion for summary judgment based on the SAFETEA-LU Technical Corrections Act of 2008 (122 Stat. 1572) passed months after this case was filed. Fact discovery is also complicated because Customer Engineers work chiefly at customer sites remote from any central NCR office, and use their homes as both an office and storage facility for their NCR van and equipment. Although substantial discovery was conducted before mediation, full discovery would predictably have involved many more depositions, costly document review and production, and

1  motions to resolve disputes over the proper scope of discovery.  Trial and post-trial
2  litigation would consume years before finality and payment.

3  **4.      The Experience and Views of Counsel**

4  "Parties represented by competent counsel are better positioned than courts
5  to produce a settlement that fairly reflects each party's expected outcome in
6  litigation."  *In re Pac. Enter. Sec. Litig.*, 47 F.3d at 378; *accord Marcus v. Kansas*
7  *Dep't of Revenue*, 209 F.Supp.2d 1179, 1182 (D. Kan. 2002) ("[W]hen a
8  settlement is reached by experienced counsel after negotiations in an adversarial
9  setting, there is an initial presumption that the settlement is fair and reasonable.");
10  *Grier*, 2000 WL 175126, at *5 ("In light of [counsel's] experience, this Court
11  accords their assessment considerable weight").  The Class here has had the benefit
12  of attorneys who are highly experienced in complex litigation, and who have
13  negotiated many such class and collective action settlements.  *See* Exhibit 2-A,
14  Firm Resume of Stueve Siegel Hanson LLP.  The negotiations were at all times
15  hard-fought and at arm's length.  *See* Paul Decl. ¶¶ 4, 6-10.  In class counsel's
16  view, the settlement provides substantial benefits to the class, especially when one
17  considers, among other things, the attendant expense, risks, difficulties, delays, and
18  uncertainties of litigation, trial, and post-trial proceedings.  *See* Paul Decl. ¶ 11.

19  **5.      The Strength of the Plaintiffs' Case**

20  The parties naturally dispute the strength of the Plaintiffs' case, and the
21  settlement reflects the parties' compromise of their assessments of the worst-case
22  and best-case scenarios, weighing the likelihood of various potential outcomes.
23  The settlement is a product of vigorous litigation and extensive dialogue between
24  the parties after mediation failed.  Even after the parties reached an agreement in
25  principle, details of the settlement involved extensive further negotiation and
26  compromise.  Paul Decl., ¶ 10.  This reflects the parties' zealous representation of
27  their respective positions on Plaintiffs' claims, NCR's defenses, and the difficulties
28  and risks associated with protracted litigation.

After thorough investigation of the facts and law, the parties have gained a comprehensive knowledge of Plaintiffs' claims and NCR's defenses. Consequently, the parties have ample evidence to make an informed assessment of the merits of their positions.  Based on their knowledge of the case and applicable law, the parties' counsel believe the settlement is fair, reasonable and adequate. Although the Court is not bound by counsel's opinion, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts." *Gribble*, 2008 WL 5281665, at *9.

### 6.      The Risk of Maintaining a Class Action through Trial

Although Plaintiffs believe the case is ideally suited for class treatment, NCR contested Plaintiffs' certification motion.  Plaintiffs allege that NCR failed to keep accurate records of all time worked by its Customer Engineers; in the absence of complete and accurate records, Plaintiffs would have faced challenges in proving liability and damages on a representative basis, contingent on rulings from the Court about each side's respective burdens of proof and presumptions under complex statutes, regulations, and case law.

In sum, the settlement brings substantial and certain monetary value to Class members now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and changing labor law.  While both sides believe the facts support their respective positions, Plaintiffs and NCR reached this compromise after extended settlement discussion facilitated by a nationally renowned mediator.  The parties therefore request that the Court grant final approval of the Rule 23 settlement.

### 7.      The Reaction of the Class to the Proposed Settlement

The Class members' reaction to the settlement has been overwhelmingly favorable.  Only two Rule 23 Class members opted out, and they worked for NCR for only 35 weeks during the Class period.  No objections to the settlement were filed.  Moreover, although members of the FLSA Class face the heightened burden

of the opt-in procedure, over 80% of FLSA Class members timely opted into the settlement.  This extremely positive reaction to the FLSA settlement confirms that the Rule 23 settlement enjoys similar approval by its respective members.

**B.     The Settlement Class Satisfies Rule 23**

When granting approval of a Rule 23 settlement, the Court should determine whether the proposed Class is a proper class for settlement purposes.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual*, § 21.62.  In certifying a settlement class, however, the Court is not required to determine whether the action would be manageable if tried, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.  Here, the Class meets the requirements of Rule 23(a) and (b)(3).

**1.     Rule 23(a)(1) Numerosity**

The numerosity requirement is met if "the proposed class is so large that joinder of all class members would be impracticable." *Ellis v. O'Hara*, 105 F.R.D. 556, 559 (E.D. Mo. 1985).  As long as there are at least 40 class members, the numerosity requirement is presumptively met.  *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  During the class period, Defendants employed approximately 530 Customer Engineers throughout California.  Thus, the numerosity requirement is satisfied.

**2.     Rule 23(a)(2) Commonality**

The commonality requirement of Rule 23(a) is met "if there are questions of fact and law which are common to the class."  Fed. R. Civ. P. 23(a)(2).  Only a "minimal" showing is necessary to satisfy the commonality requirement.  *Tierno v. Rite Aid Corp.*, 2006 WL 2535056 at *2 (N.D. Cal. Aug. 31, 2006).  Here, the overarching questions of fact and law that are common to all members of the Class include whether Defendants failed to pay Customer Engineers the wages due and owing to them and whether NCR's conduct was willful.  In addition, common questions binding the Class include whether Defendants (i) failed to provide

required meal and rest periods; (ii) failed to pay all compensation due and owing at termination of employment; and (iii) whether Customer Engineers are subject to the FLSA's Motor Carrier Act exemption.

### 3.    Rule 23(a)(3) Typicality

Rule 23(a)(3) requires that "the claims ... of the representative parties are typical of the claims ... of the class." Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  Like all other Class Members, Class Representative Teeter was a Customer Engineer in California for both Defendants during the relevant time frame.  Moreover, Plaintiff Teeter's interests are co-extensive with those of the Class because she alleges the same injury as all Class members, from the same alleged misconduct by Defendants.  Defendants, likewise, allege defenses co-extensive to Plaintiff Teeter and the Class.  Because the interests and potential injuries of the Class Representative align with those of absent Class members, they satisfy the typicality requirement.

### 4.    Rule 23(a)(4) Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation depends upon the qualifications and experience of plaintiff's counsel and whether the representative plaintiffs have interests antagonistic to the class." *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 614 (D. Kan. 1995).  Here, Rule 23(a)(4) is satisfied because the Class Representative has interests in harmony with the Class and has retained counsel with extensive experience in prosecuting class actions and complex cases, including wage and hour cases.  Plaintiff Teeter has vigorously pursued the interests of the Class, fully engaged in discovery—including being deposed—and participated in the mediation.  Her interests are synonymous with those of the Class.

### 5.    Rule 23(b)(3) Predominance and Superiority

Finally, to certify a class action under Rule 23(b)(3), the Court must find that: (1) common questions predominate over any questions affecting only individual members; and (2) class resolution is superior to other available methods for the fair adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

"The Ninth Circuit has endorsed the proposition that 'when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 628 (2005) (citing *Hanlon*, 150 F.3d at 1022).   Here, questions of law and fact common to the Class—involving whether Defendants violated federal and California state wage law and whether Customer Engineers are subject to the FLSA's Motor Carrier Act exemption—predominate over any individual questions.

A class action is also superior to other methods for the fair and efficient adjudication of this controversy.  "[O]ne of the most important objectives of the class action procedure is the aggregation of a small number of claims to allow for relief in situations where it might not otherwise be obtainable."  *Morris v. Transouth Fin. Corp.*, 175 F.R.D. 694, 701 (M.D. Ala. 1997).  Members of the Class have now had an opportunity to opt out of the case, and only two Class members chose to do so.  Further, none of the Class members objected to the terms of the settlement.  The Class notice program thus confirms that Class members overwhelmingly prefer to have their claims resolved through this settlement. Additionally, concerns of efficiency and economy favor litigating the issues in one suit before this Court, rather than forcing individuals to file numerous suits. Adjudicating these claims through this settlement avoids duplicative litigation of uniform questions of fact and law and minimizes expense.

## V.  THE CLASS NOTICE PROVIDED THE HIGHEST LEVEL OF NOTICE

Under Rule 23(c)(2), courts "shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974).  Here, the Rule 23 Notice approved by the Court followed the template approved by the Federal Judicial Center, and was mailed to Class members at their last known addresses, after running the addresses through the National Change of Address database, thus complying with the highest level of notice recognized by law.

The notice must also "concisely and clearly state in plain, easily understood language" the nature of the action; the definition of the class certified; the class claims, issues, and defenses; that the class member may appear through counsel if the class member wishes; that the Court will exclude class members who request exclusion and the process for doing so; and the binding effect of a class judgment on class members.  Rule 23(c)(2).  The Notice, which the Court approved prior to its being sent, fully complied with these requirements.

## VI.  THE ACTIVE PLAINTIFFS ARE ENTITLED TO INCENTIVE AWARDS

In light of their substantial efforts assisting counsel in achieving this settlement on behalf of the Class Members, named Plaintiff Michelle Teeter and two other members of the Rule 23 Class—Plaintiffs Knapp and Rascon—are entitled to Incentive Awards.

The time an individual devotes to a lawsuit that inures to the common benefit of others warrants entitlement to an incentive award above and beyond what the typical class member is receiving.  *Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*, 1993 WL 355466 (W.D. Okla. 1993) (awarding $10,000 incentive award to each of three class representatives); *Kamp v. The Progressive Corp., et al.*, 2004 WL 2149079 (E.D. La. 2004) (approving up to $10,000 in incentive awards to class representative and other plaintiffs).

Courts routinely approve incentive awards for class representatives whose efforts provided a benefit to absent class members. *See, e.g., Thornton v. East Texas Motor Freight,* 497 F.2d 416, 420 (6th Cir. 1974) (approving greater awards for those who took a more active role in seeking class relief); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (approving incentive awards where named plaintiffs took steps to protect interests of class members, thereby effectuating "a Settlement that provides substantial economic and non-economic benefits to the Class Members"); *Luevano v. Campbell,* 93 F.R.D. 68, 89 (D.C.D.C. 1981); *Huguley v. General Motors Corp.,* 128 F.R.D. 81, 85 (E.D. Mich.1989) (class representatives "are entitled to more consideration than class members generally because of the onerous burden of litigation they have borne"), *aff'd,* 925 F.2d 1464 (6th Cir.).

In *Glass v. UBS Financial Services, Inc.*, the court approved $25,000 incentive awards to each of four class representatives in a case where no formal discovery was conducted and the case was settled for $45,000,000.00. 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007). The Ninth Circuit has affirmed incentive awards of $5,000 to two plaintiffs whose efforts in the litigation resulted in a class fund of $1.75 million. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000).

Plaintiffs request a $10,000 incentive award to Class Representative Teeter. Such an award is appropriate and reasonable given the tremendous time and effort she put in to this case that led to the settlement. Ms. Teeter was responsible for initiating this action by investigating and retaining counsel experienced in similar litigation, and even conducted her own legal research so she could understand which issues to address with counsel. She provided invaluable guidance to Plaintiffs' counsel in prosecuting this case on behalf of other similarly situated employees. Paul Decl., ¶ 13. Ms. Teeter provided the large majority of documents provided to Plaintiffs' counsel by the Plaintiffs, spent countless hours on the phone

with counsel, and traveled to San Francisco from her home in Hesperia to act as Plaintiffs' representative at the mediation. *Id.* Ms. Teeter assisted Plaintiffs' counsel in evaluating NCR's proffered defenses to this action and in understanding NCR's payroll system. She responded to written discovery and appeared for deposition with her direct supervisor present. She was active and involved in the prosecution of this case from beginning to end. *Id.*

In doing so, Ms. Teeter spent a substantial amount of time and undertook significant risks, including the potential for retaliation, the risk she would not prevail, that the class would not be certified, and that she could be liable to NCR for costs if her claims were unsuccessful. *See Hanson v. Acceleration Life Ins. Co.*, 2000 WL 3334098, at *6 (D.N.D. June 21, 2000); Paul Decl. at ¶ 13. In fact, her efforts in pursuing this case resulted in the deterioration of her relationship with her manager, which ultimately led to NCR offering and her accepting a severance package to leave her employment with NCR with no subsequent employment lined up, and during very difficult economic times.

Plaintiffs also request incentive awards of $1,000 each to Messrs. Knapp and Rascon, the first two California plaintiffs to opt-in to the case. Each of these gentlemen opted into the case at an early stage and aided the prosecution of the case on behalf of the Rule 23 class. Messrs. Knapp and Rascon spoke with Plaintiffs' counsel on the telephone on numerous occasions to assist counsel in understanding the facts underlying the parties' claims and defenses, and corroborated Ms. Teeter's testimony concerning the wide-spread nature of her allegations. Messrs. Knapp and Rascon both responded to written discovery. Paul Decl. ¶ 15. Mr. Knapp additionally provided a declaration supporting Plaintiffs' motion for class certification. Mr. Rascon has been employed by NCR throughout this litigation and thus faced the fear and uncertainty attendant to going to court against his employer. *Id.* Messrs. Knapp and Rascon should accordingly be awarded $1,000 each for their contributions to prosecution of the case.

The Rule 23 Settlement Fund of $2,512,000 was accomplished with the assistance of these three plaintiffs and justifies incentive awards totaling $12,000, according to their respective contributions to prosecuting the case. The requested Incentive Awards recognize the approximate relative time commitments and substantive contributions to the case of each plaintiff, with the largest award of $10,000 for Plaintiff Teeter and smaller awards of $1,000 for Plaintiffs Knapp and Rascon. The other Class Members substantially benefited from their actions. Without the efforts of Ms. Teeter in initiating the case and these other Plaintiffs who actively participated in discovery and prosecution of the case, this settlement would not have been achieved. Paul Decl., ¶ 16. In light of their efforts, the requested Incentive Awards, representing less than one-half of one percent of the Rule 23 Settlement Fund, are amply justified.

The modest amounts sought as incentive awards in this case fall well within the range of incentive awards approved by other courts. *See, e.g., Pelletz v. Weyerhaeuser Co.*, 592 F.Supp.2d 1322 (W.D. Wash. 2009) (class representatives' contribution to litigation and settlement warranted incentive award of $7,500); *Hughes v. Microsoft Corp.,* 2001 WL 34089697, at *12-13 (W.D. Wash. Mar. 26, 2001) (approving incentive awards of $7,500, $25,000, and $40,000); *Carroll v. Blue Cross & Blue Shield of Mass.,* 157 F.R.D. 142, 143 (D. Mass. 1994), *aff'd* 34 F.3d 1065 (1st Cir. 1994) ("the class representatives shall receive payments of $7,500 each as compensation for services rendered to the class in initiating and prosecuting this action"); *Bogosian v. Gulf Oil Corp.,* 621 F.Supp. 27, 32 (E.D. Pa. 1985) ("the propriety of allowing modest compensation to class representatives seems obvious," and awarding $20,000 to two named class representatives). These incentive awards should be granted, as the amount of the awards is reasonable and justified, and well within the range of awards granted to active plaintiffs in similar litigation.

Defendants do not oppose these incentive awards. Agreement, ¶ A.5.

## VII. Plaintiffs' Counsel Is Entitled to Reasonable Fees and Expenses

By separate fee application, Class counsel also request approval of their attorneys' fees and reimbursement of expenses incurred in this case since its inception and for future legal services and expenses incurred in connection with the settlement. Class counsel is seeking 25 percent of the Global Settlement Fund as a fee plus expenses up to $35,000. Defendants do not oppose or dispute such application. *See* Settlement Agreement at ¶ A.6.

## VIII. Conclusion

For the reasons set forth above, the parties respectfully request that the Court grant their Joint Motion for Final Approval of Class Settlement, and any other relief the Court deems just and proper.

**STUEVE SIEGEL HANSON LLP**

___/s/ Richard M. Paul III_____
George A. Hanson
Richard M. Paul III
Lee R. Anderson
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7170
Facsimile: (816) 714-7101

Robert W. Thompson
Charles S. Russell
CALLAHAN MCCUNE & WILLIS, APLC
111 Fashion Lane
Tustin, California 92780
Telephone: (714) 730-5700
Facsimile: (714) 730-1642

**Attorneys for Plaintiffs**

**LATHAM & WATKINS LLP**

__/s/ Joseph B. Farrell_____
Joel E. Krischer
Joseph B. Farrell
Gene Chang
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Angela K. Knarr
Latham & Watkins LLP
650 Town Center Drive, Suite 2000
Costa Mesa, CA 92626-1925
Telephone: +1.714.540.1235
Facsimile: +1.714.755.8290

**Attorneys for Defendant**