1  Robert W. Thompson, Esq. (SBN 106411)
   Charles S. Russell, Esq. (SBN 233912)
2  CALLAHAN MCCUNE & WILLIS, APLC
   111 Fashion Lane
3  Tustin, California 92780
   Tel:  714-730-5700
4  Fax:  714-730-1642

5  George A. Hanson (appearing *pro hac vice*)
   Richard M. Paul III (appearing *pro hac vice*)
6  Lee Anderson (appearing *pro hac vice*)
   STUEVE SIEGEL HANSON LLP
7  460 Nichols Road, Suite 200
   Kansas City, Missouri 64112
8  Tel:  816-714-7100
   Fax:  816-714-7101

9
   **ATTORNEYS FOR PLAINTIFFS**
10

11                **UNITED STATES DISTRICT COURT**
                  **CENTRAL DISTRICT OF CALIFORNIA**
12                        **EASTERN DIVISION**

13
   | MICHELLE TEETER, individually, and on behalf of a class of others similarly situated, | Case No. 5:08-cv-00297-SGL-JCR |
14 | | **PLAINTIFFS' UNOPPOSED APPLICATION FOR ATTORNEY FEES AND EXPENSES** |
15 | Plaintiffs, | |
16 | v. | Date:  August 4, 2009 |
17 | NCR CORPORATION, *et al.* | Time:  9:30 a.m. |
18 | Defendants. | Dept.:  1 |
   | | Judge:  Hon. Stephen G. Larson |

19

20        Plaintiffs' counsel hereby apply for an award of attorney fees and expenses

21 incurred in the prosecution of this lawsuit on behalf of the Class.  For the reasons set

22 forth herein, Plaintiffs' counsel respectfully request that the Court order an attorney fee

23 award as agreed to in the Settlement Agreement between the parties and equal to the

24 benchmark in the Ninth Circuit of 25% of the settlement fund, plus expenses in the

25 amount of $35,000.

26

27

28

# I.   INTRODUCTION

This case is a complex, nationwide class and collective action.  Following an unsuccessful mediation that involved arm's-length negotiations between experienced attorneys with the assistance of a highly respected mediator, the parties pursued extensive subsequent negotiations until Plaintiffs' counsel achieved an outstanding settlement in the amount of $10,500,000 on behalf of two classes of Plaintiffs:  an FLSA opt-in class and a Rule 23 class.  The average per capita gross recovery for the approximately 5,000 workers in the classes is over $2,000.  This excellent result was chiefly due to the skill and hard work of Plaintiffs' counsel.

Plaintiffs' counsel conducted extensive factual and legal investigation; filed a detailed complaint; analyzed and researched the contentions and affirmative defenses in Defendant's Answer; interviewed and opted-in to the case four dozen plaintiffs prior to issuing class notice; prepared written discovery requests and analyzed thousands of pages of documents produced by Defendants; responded to extensive written discovery by Defendants; took and defended depositions; scrutinized the damages likely to be proven at trial; participated in mediation with a highly respected mediator and diligently continued negotiations after formal mediation failed; and ultimately negotiated a very favorable settlement for the Class that puts substantial amounts of money in the hands of class members.

Plaintiffs' counsel have not been paid for their efforts.   This case was commenced in March 2008, and over 1,450 hours of attorney and paralegal time have been expended in this matter, the payment for which has been wholly contingent on the result achieved.  *See* Declaration of Richard M. Paul III at ¶ 4, attached hereto as Exhibit A; Declaration of Charles Russell at ¶ 4, attached hereto as Exhibit B.  Plaintiffs' counsel respectfully request attorneys' fees and expenses that are reasonable under the applicable legal standards, the risk undertaken, and the result achieved.  Plaintiffs' counsel request that the Court award attorneys' fees of 25% of the settlement fund, amounting to $2,625,000, plus expenses incurred.

## II.   LEGAL STANDARD

### A.   A Reasonable Percentage of the Fund Recovered Is the Preferred Approach for Awarding Attorneys' Fees in a Common Fund Case

Under both § 216(b) of the FLSA and Rule 23(h), plaintiffs' class counsel are entitled to reasonable attorneys' fees spent in obtaining a settlement for the class.   For their efforts, Plaintiffs' counsel request compensation from the settlement fund on a percentage basis.   It is well-settled that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."   *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980).   This long-standing common fund doctrine is firmly rooted in American law.   *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124 (1885); *Trustees v. Greenough,* 105 U.S. 527 (1882).

The typical method in the Ninth Circuit and elsewhere for awarding attorneys' fees in common fund cases such as this is to award a percentage of the settlement fund.   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (stating 25% of fund as fee award is the benchmark); *see Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (recognizing "preference for the percentage of the fund method"); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 255-56 (3d Cir. 1985) (stating that percentage of fund is preferred method of awarding fees in common fund cases).

Compensating counsel in common fund cases on a percentage basis makes good sense.   First, it aligns class counsel's interests with those of the class, creating a strong incentive to maximize the possible recovery to all claimants.   Second, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method.   Third, it rewards prompt and efficient resolution of class and collective litigation, whereas strict application of the alternative "lodestar" method encourages inefficiency and resistance to prompt settlement.   *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993).   All these reasons support awarding attorney fees as a percentage of the Settlement Fund here.

**B.   A Fee of 25 Percent of the Fund Is Reasonable and Customary**

In applying the percentage of the fund methodology, the Ninth Circuit has held that 25% of the total settlement fund is the benchmark fee award, and higher awards are within the Court's discretion.  *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (affirming 28% of fund as attorney fee); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming 33% of fund as fee); *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% of fund as fee).   The notice sent to all class members fully discloses that Plaintiffs' counsel would apply to the Court for attorney fees not to exceed 25% of the settlement fund, and no class members have objected to the requested fee award.

Courts nationwide routinely approve attorneys' fee awards of 25% or more of a settlement fund.  *E.g., Gribble v. Cool Transp. Inc.*, 2008 WL 5281665, at *12 (C.D. Cal. Dec. 15, 2008); *Craft v. County of San Bernardino*, 2008 WL 916965, at *13 (C.D. Cal. April 1, 2008) (granting 25% fee award; extensively analyzing the rationale for fees as a percentage of the class fund); *In re Xcel Energy, Inc.,* 364 F.Supp.2d 980, 1002-03 (D. Minn. 2005) (approving fee award of 25%).   As set forth below, examination of the factors courts consider when assessing reasonable fee awards shows that the 25% award requested here is fair and reasonable.

**1.    The Result Achieved In Light of the Case's Risks and Difficulty**

The result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained").   The Gross Settlement Fund here is $10,500,000.   After amounts set aside for 25% attorneys' fees and up to $35,000 in out-of-pocket expenses, the amount to distribute to all members of both classes is $7,840,000, less administrative expenses.   In light of the legal and factual complexities of this case, the parties' settlement is extremely favorable for class members.

For example, the changing state of the law, exemplified by the SAFETEA-LU Technical Corrections Act of 2008 (122 Stat. 1572) passed by Congress in June 2008 on which NCR's motion for partial summary judgment relied, demonstrates one of the significant risks Plaintiffs faced in this case. While the Act that passed ultimately did not gut the Plaintiffs' case (though NCR did not agree), that was only due to a last minute amendment to the Senate Bill that changed a provision that would have otherwise granted NCR immunity from large portions of Plaintiffs' case. Even with this last minute amendment, NCR believed its argument survived and moved for partial summary judgment. Plaintiffs' counsel's success in negotiating settlement while NCR's partially-dispositive motion was pending and that threatened to eliminate the vast majority of class members' federal wage claims is an outstanding result. Additionally, although Plaintiffs' counsel believe this case is ideally suited for class and collective action treatment, Plaintiffs faced substantial risks in maintaining class and collective action certification of nationwide claimants through trial. Plaintiffs' counsel was able to negotiate this settlement while their motion for class and collective action certification was pending. Also, had this settlement not been achieved, Plaintiffs faced prolonged and expensive discovery and motion practice, lengthy fact and expert discovery, a costly jury trial, and years of post-trial appeals, with ultimate success uncertain.

From the outset, Plaintiffs' counsel faced these and other risks in pursuing this litigation to a successful conclusion. Numerous courts have recognized that risk is an important factor in determining the fee award. *E.g., In re Xcel Energy,* 364 F. Supp. 2d at 994; *In re Charter Comm'ns Inc., Sec. Litig.,* 2005 WL 4045741, at *15 (E.D. Mo. June 30, 2005). The fact that substantial amounts are available to class members without the uncertainty of certification or trial, delivered now through this expeditious settlement rather than after years of litigation, qualifies this settlement as favorable to Plaintiffs under any assessment.

The settlement has been achieved through the efforts of Plaintiffs' counsel without the necessity of prolonged litigation and trial, justifying a 25% fee.  From the inception of this action, Plaintiffs' counsel put together an experienced team of lawyers who are responsible for this positive result.   Moreover, despite the defenses on liability and damages raised by Defendants, the Settlement Fund may be equal to or more than the Class would have recovered if it had proceeded to trial.  "The certainty of fixed recovery by way of agreement is often preferable to the vagaries of what might be achieved by a trial."  *Seiffer v. Topsy Int'l, Inc.,* 70 F.R.D. 622, 629 (D. Kan. 1976).  Plaintiffs' counsel respectfully submit that the Class could not have gotten better representation based on the result achieved.

The complexity and risks of this action plainly support the fee requested.  Plaintiffs' counsel have received no compensation to date for this litigation, and have advanced out-of-pocket expenses of more than $35,000 in prosecuting the case for the benefit of the Class.  *See* Paul Decl. at ¶ 9; Russell Decl. at ¶ 9.  Any fee award and expense reimbursement to Plaintiffs' counsel has always been at risk and completely contingent on the result achieved, supporting the requested fee.

## 2.     The Time and Labor Involved

The vast resources available to Defendants required Plaintiffs' counsel to expend substantial professional and financial resources.  Two law firms expended the time and energy of multiple lawyers as well as paralegals and staff to properly and adequately investigate the facts and legal consequences of pursuing this action, and to prosecute the case to this favorable settlement.  To date, Plaintiffs' counsel have spent over 1,450 hours prosecuting this litigation.  *See* Paul Decl. at ¶ 4; Russell Decl. at ¶ 4.  As discussed previously, this time includes the pre-filing investigation, written and deposition discovery, briefing complex motions, communicating with clients, and mediation and post-mediation negotiations.  Plaintiffs' counsel continue dedicating substantial amounts of time working with class members to answer questions and to ensure a smooth settlement process.

Importantly, early settlement is not a reason to reduce the attorney fee award because doing so would discourage early resolution of cases.  "Early settlements benefit everyone involved in the process and everything that can be done to encourage such settlements—especially in complex class action cases—should be done."  *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at \*7 (S.D. Cal. Aug. 30, 1990) (awarding 30% of common fund where "Class counsel obtained this result in a very short period of time").  In contrast, setting a fee award based principally on hours expended "creates incentives for counsel to expend more hours than may be necessary."  *Glass v. UBS Fin. Serv., Inc.*, 2007 WL 221862, at \*16 (N.D. Cal. Jan. 26, 2007).  Although Plaintiffs' counsel would undoubtedly have had to devote more time litigating the case if the case were tried or settlement were delayed to a later stage, counsel's success in achieving early settlement—sparing the parties and the Court additional time and expense—is to be rewarded, not discouraged by a reduced fee.

### 3.    The Quality and Efficiency of the Work

The quality and efficiency of Plaintiffs' counsel's work on this case was superior as reflected in both the result and its timing.  Plaintiffs' counsel demonstrated that they were able to develop a convincing case, notwithstanding the Defendants' arguments that the case could not be successfully prosecuted through trial as a class and collective action.  That Plaintiffs' counsel successfully negotiated settlement relatively early in the case, avoiding further expenditure of resources by the parties and the Court further shows their skill and efficiency.  In particular, Plaintiffs' counsel's skill in negotiating settlement while facing a summary judgment motion based on a newly enacted statute is precisely the type of "exceptional result" that "should be fully rewarded."  *Glass* 2007 WL 221862, at \*16 ("Class counsel's prompt action in negotiating a settlement while the state of the law remained uncertain should be fully rewarded.").  Plaintiffs' counsel's early recovery for the Class is a direct result of their legal acumen and diligence.

Additionally, that the total settlement fund is large is no basis for reducing the percentage of Plaintiffs' counsel's fee.   "[D]ecreasing the percentage [of attorney fees] as the recovery [to the class] increases … gives counsel an incentive to settle cases too early and too cheaply."  *Charter*, 2005 WL 4045741, at *15. Plaintiffs' counsel here exercised great strategic skill in settling both successfully and early, recovering an average of over $2,000 gross per capita, and should not have their fee diminished merely because they were diligent and efficient in recovering for the Class early and extremely successfully.

### 4.      The Complexity of This Action's Factual and Legal Questions

A particular risk factor supporting attorney fees is the complexity of the case.  *See In re Pac. Enter. Sec. Litig.*, 47 F.3d at 379.  Class actions are inherently complex, and this case is made more complex by the intersection of state and federal law and the juxtaposition of the Rule 23 class with the FLSA collective action, requiring separate notice to the two classes and separate evaluation of liability and computation of damages to the two classes.  Plaintiffs' counsel are extensively experienced in handling complex class and collective actions.  Paul Decl. at ¶ 11.  Moreover, as previously discussed, numerous unresolved and evolving legal issues remained and would be presented at each stage of this litigation, including, for example, ruling on Defendant's motion for partial summary judgment that sought to bar the majority of Plaintiffs' federal claims, Plaintiffs' motion for class and collective action certification, as well as Defendants' numerous affirmative defenses.   Had this settlement not been achieved, the factual and legal questions at issue would have been the subject of many hours of depositions and trial testimony, and exhaustive briefing to the Court.  Numerous difficult issues would be raised in Plaintiffs' attempt to prove Defendants liable under the applicable legal standards, and to prove damages for class members throughout the country.  Given the complexities of this wage and hour class action, the fee requested is certainly fair.

### 5.     The Contingent Nature of the Case and the Financial Burden Carried by Plaintiff's Counsel

The Court should consider the contingent nature of the fee and the difficulties overcome in obtaining a settlement in determining a fair fee.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See Richard Posner, Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994). Moreover, "in the common fund context, attorneys whose compensation depends on their winning the case, must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Id.* at 1300-01.

Plaintiffs' attorneys in this case routinely evaluate requests to represent individuals and businesses in litigation on a contingent or hourly-fee basis, and in agreeing to represent a party in any case, the attorneys necessarily decline representation in other potential cases. The attorneys agree to undertake a contingent fee case on the understanding that the potential fee earned in the case must be substantially higher than the firm's regular hourly rate would yield in the same case, in order to compensate Plaintiffs' counsel for the substantial risk that the fee will be less than expected and the uncertainty of recovering any fee at all.

The Court may consider that Plaintiffs' counsel were faced with very able opposing counsel. *See Charter*, 2005 WL 4045741, at *17 ("the quality and vigor of opposing counsel is important in evaluating the services rendered by" Plaintiffs' Counsel). The law firm of Latham & Watkins LLP, an international firm that specializes in this practice area, vigorously defended its clients. Defense counsel's fee was not contingent on the outcome of the litigation.

1   Plaintiffs' counsel, in contrast, have received no compensation for their

2   work during the course of this litigation and will have expended over $35,000 in

3   expenses on behalf of the Class.  See Paul Decl. at ¶ 9; Russell Decl. at ¶ 9.  Any

4   award of fees and expenses to Plaintiffs' Counsel has always been contingent on

5   the result achieved and on this Court's discretion in making an award.  Plaintiffs'

6   counsel respectfully suggest that the 25% fee requested here fairly compensates

7   counsel for the substantial risks they assumed in representing the Class and for the

8   extremely favorable outcome they achieved.

9   **6.      A 25 Percent Fee Award Is At or Below the Market Rate**

10   As outlined above, a 25% fee, or more, has been repeatedly awarded by

11   district courts in this circuit, and is in line with awards in numerous similar cases.

12   In addition, the requested fee reflects the private marketplace, a result repeatedly

13   encouraged by the courts.  *See In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 572 (7th

14   Cir. 1992) ("The object in awarding a reasonable attorney's fee … is to give the

15   lawyer what he would have gotten … in an arm's length negotiation, had one been

16   feasible.").  In private litigation, attorneys regularly contract for contingent fees

17   between 30% and 40% directly with their clients.  *See In re M.D.C. Holdings*, 1990

18   WL 454747, at *7 ("In private contingent litigation, fee contracts have traditionally

19   ranged between 30% and 40% of the total recovery.").  These percentages are the

20   prevailing market rates throughout the United States for contingent representation.

21   Plaintiffs' Counsel request an award of only 25%, which is below the

22   traditional range for contingent fee litigation, these attorneys' usual contingent-fee

23   rate (Paul Decl. at ¶ 12), the 35% contingent fee agreed to by Plaintiffs in this case

24   who opted in before notice was disseminated, and the percentage fee typically

25   awarded in similar class action litigation.  A fee award of 25% recognizes the

26   benefits conferred on the Class and the circumstances under which this result was

27   accomplished.  The requested 25% fee is fair to both counsel and the Class and

28   should be awarded by the Court.

### III. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Plaintiffs' counsel request to be reimbursed for $35,000 of the expenses they incurred in prosecuting this litigation on behalf of the Class, which was an agreed cap even though Plaintiffs' Counsel's total expenses exceed that amount. These expenses are summarized by category in the declaration of counsel submitted herewith. *See* Paul Decl. at Ex. A-2; Russell Decl. at Ex. A-2.

The appropriate analysis in determining whether particular costs are compensable is whether the costs are of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *Abrams v. Lightolier, Inc.,* 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them); *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42,* 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if normally billed to client).

In *Brown v. Pro Football*, 839 F. Supp. 905 (D.D.C. 1993), the court addressed whether plaintiffs who created a common fund were entitled to be reimbursed for their expenses. Relying on *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989), the Court held that counsel's expenses were appropriately compensable:

> Plaintiffs' out-of-pocket costs for telephone, telecopier, air and local couriers, postage, photocopying, Westlaw research, secretarial overtime, and counsels' travel expenses are routinely billed to fee-paying clients, and thus are all compensable as part of a reasonable attorney's fee.

*Brown,* 839 F. Supp. at 916. The categories of expenses for which Plaintiffs' Counsel seek reimbursement here are categories normally charged to hourly clients and, therefore, should be reimbursed out of the common fund. Paul Dec., ¶ 10; Russell Dec., ¶ 10. In sum, the award of $35,000 in expenses from the fund created by Plaintiffs' Counsel is appropriate and should be approved by the Court.

**IV.   CONCLUSION**

The settlement of this action for $10,500,000 is an excellent result, and is the culmination of the diligent work of Plaintiffs' Counsel.  For their efforts, counsel request that the Court approve the fee and expense application and enter an order awarding them fees of 25% of the Settlement Fund, totaling $2,625,000, and expenses in the amount of $35,000.

**STUEVE SIEGEL HANSON LLP**

/s/ Richard M. Paul III
George A. Hanson
Richard M. Paul III
Lee R. Anderson
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7170
Facsimile: (816) 714-7101

Robert W. Thompson
Charles S. Russell
CALLAHAN MCCUNE & WILLIS, APLC
111 Fashion Lane
Tustin, California 92780
Telephone: (714) 730-5700
Facsimile:   (714) 730-1642
**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on July 24, 2009, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record including the following:

Joel E. Krischer
Joseph B. Farrell
Angela K. Knarr
Gene Chang
Latham & Watkins LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
ATTORNEYS FOR DEFENDANT

/s/ Richard M. Paul III
Attorney for Plaintiffs